[Civ. No. 4186. Third Appellate District.—April 2, 1931.]

RUTH E. HAUSKINS, Respondent, v. FRANK H. BUCK COMPANY et al., Appellants.

Gianelli & Metzler, Foltz, J. Hamilton Davis, Rendon & Wallace and Neumiller. & Ditz for Appellants.

Gannon & Ludwigs for Respondents.

MR. JUSTICE Pro Tem. TUTTLE Delivered the Opinion of the Court.—This is an action brought by respondent against appellant to recover damages arising out of the death of her husband, who was killed in a collision between his bicycle and the automobile driven by appellant Davis, an employee of appellant Frank H. Buck Company. The trial was before the court, and judgment was entered in favor of plaintiff in the sum of $9,500. This appeal is taken from the judgment.

The trial court found that appellants were guilty of negligence, and that there was no contributory negligence upon the part of decedent. A reversal is sought upon the ground that such findings are not supported by the evidence, and upon the further ground that the court erred in denying a motion for nonsuit.

The facts in this case are as follows: The so-called Acampo-Lockeford road, a public highway in the county of San Joaquin, state of California, runs in a general easterly and westerly direction and intersects the tracks of the Central California Traction Company at a place commonly known as Youngstown station, some few miles north and east of the city of Lodi. Several packing and loading sheds are maintained at Youngstown station by concerns engaged in the fruit shipping and packing business, and one of these is owned and operated by the appellant Frank H. Buck Company. These sheds are located to the east of the tracks of the Central California Traction Company and, with the exception of one, are on the south side of the Acampo road. The Buck Company's shed is the second shed east of the railroad tracks on the south side of the road, and is opposite and slightly to the west of the home of Herbert Buck, which is located on the north side of the Acampo road. To the immediate west of the Herbert Buck home is a wide graveled and oiled driveway leading to Herbert Buck's garage at the rear of his house. This driveway is, of course, on the north side of the road and is also slightly east of the Frank H. Buck Company's shed, which is on the south side of the road. The Acampo road is about sixty feet wide while the main traveled portion thereof is about twenty-two feet wide and is paved. The balance of the roadway in front of Herbert Buck's home between his front yard and the pavement is oiled and graveled just like the highway leading to his garage.

At the time of the collision hereinbefore mentioned, appellant J. Hamilton Davis was in the employ of appellant Frank H. Buck Company. At about a quarter to five in the afternoon Mr. Davis got into his automobile, which was parked in an oiled driveway on the south of the Acampo road and just to the east of the Buck Company shed, headed in a southerly direction, with the intention of proceeding from the Frank H. Buck Company's shed to the office of said company in Lodi. Just prior to the accident appellant Davis backed out of the oiled driveway in a northeasterly direction and diagonally across the main traveled portion of the Acampo road.

No warning of any kind was given by the driver at any time prior to or while he was so engaged in backing his

automobile. He testified that he looked up the highway and toward the east when he started to back and also when he was about in the center thereof, and that he saw no vehicle of any description. He reached a point where his left front wheel was some six inches off the paved portion of the highway, and his left rear wheel was some six feet off, when decedent, riding a bicycle, ran into the rear of the automobile and was thrown to the pavement and killed.

One of plaintiff's witnesses testified that he was talking to a man at the scene of the accident and just prior thereto; that he started to walk east along the highway; that about 100 feet distant from the scene, he saw decedent riding his bicycle westerly along the right side of the highway, and off the pavement; that a short distance behind the bicycle he saw a truck moving in the same direction.

The driver of the automobile testified that he was backing at the rate of three miles per hour, and that the collision occurred just as he stopped his car. A witness, who was some fifty feet from the scene of the accident, testified that he heard the brakes of the automobile squeaking; that he thereupon looked in the direction whence the sound came, and saw deceased run into the rear of the car, which had stopped just off the paved portion of the highway; that just prior to that time he had observed deceased approaching upon his bicycle, some seventy-five feet away. The highway where the accident occurred carries considerable traffic connected with the shipping of grapes. There is a large fruit shipping house directly across the road, and three more in the immediate vicinity. No effort was made by defendants to prove that it was not possible for the driver of the car to turn around, while off the highway, and approach it head on, instead of by backing into it.

■ From the foregoing facts it appears that, without warning of any character, the driver of the car backed diagonally across a highway where he had reason to believe considerable traffic would be moving. It is true he testified that he looked when he started to back and again when he was about halfway across, and that he did not see the deceased approaching, nor did he see any other vehicles. It is an admitted fact, however, that decedent was approaching upon his bicycle, and he could not have been very far away. It was daylight, the road was straight for a mile or more, and

there was nothing whatever to obstruct the driver's view. Under such circumstances, the court may have found that the driver saw decedent. (*Smith* v. *Los Angeles R. Co.*, 105 Cal. App. 657 [288 Pac. 690].) It may also have discredited the testimony entirely, and found that the driver did not look.

The act of backing an automobile diagonally across a highway is one which is attended with great risk and peril, and it can only be accomplished by a strict observance of every ordinary precaution. It was for the court to say, under all the facts and circumstances of this case, whether or not the driver used that degree of care and diligence which the situation demanded.

We are of the opinion that, irrespective of the violation of any provision of the California Vehicle Act, there was sufficient evidence in the record to justify the court in finding the driver of the car guilty of negligence. The court was correct in denying a motion for nonsuit based upon the ground that the evidence was insufficient to support a finding of negligence upon the part of the driver.

In arriving at this conclusion, this court may take into consideration all the evidence introduced by both parties. (*Peters* v. *Southern Pac. Co.*, 160 Cal. 48 [116 Pac. 400].)

Was there sufficient evidence to justify the court in finding that decedent was free from contributory negligence? The burden of proof upon this issue rested upon defendants. There is very slight evidence bearing upon the conduct of deceased. He was seen riding along the unpaved portion of the highway, some ninety-five feet from the point of impact. No one saw him thereafter until he was within two feet of the rear of the car. At that point one witness said he saw him with his head down, riding into the automobile. The position of appellants is that decedent was negligent in riding with his head down. The witness who testified to this fact only saw the deceased *just as he struck*, but there is absolutely nothing in the record to show the conduct of deceased as he approached the scene. Furthermore, during his examination, counsel placed his own head in various attitudes. Upon his assuming a certain posture, the witness said, "That is about it." This is evidence which the record does not disclose, and we can reasonably assume that the trial court concluded that decedent was able

to see ahead, notwithstanding that his head was inclined downward.

Respondent relies upon the presumption, "That a person takes ordinary care of his own concerns." (Code Civ. Proc., sec. 1963, subd. 4.) Presumptions are declared by section 1957 of the same code to be evidence. Under the facts of this case, this presumption was entitled to be weighed and considered by the court, together with other evidence upon the subject. This is not a case where there is any substantial evidence which might overcome or dispel the presumption as a matter of law. Neither was there any evidence to the contrary produced by plaintiff or any of her witnesses.

We cannot agree with appellants when they state the evidence shows that deceased deliberately killed himself. It is a case where the salutary effects of the presumption should be invoked. In a word, appellants, from the mere fact that deceased ran into the rear of their automobile, would have us conclude that he was negligent as a matter of law. As we have pointed out, the presumption is exactly to the contrary, under the facts of this case.

Assuming that decedent saw the automobile when it started to back, he might reasonably have assumed that the driver would stay upon his own side of the road, instead of backing diagonally across the road and directly into the path of decedent. The latter also had a right to assume that the driver had seen him, and would use due care. It was not the duty of decedent to give way to appellants merely because he was riding a bicycle and the latter were driving an automobile. They were equally amenable to the law. (*Konig* v. *Lyon*, 49 Cal. App. 113 [192 Pac. 875].) It must be remembered that decedent was at all times on the right side of the road, and in a position where he had a right to be. As to the conduct of the driver, the Supreme Court has very aptly depicted the situation in the case of *Rush* v. *Lagomarsino*, 196 Cal. 308 [237 Pac. 1066, 1069], in the following language:

"Accordingly the driver of an automobile 'has no right to assume that the road is clear, but under all circumstances and at all times he must be vigilant and must anticipate the presence of others. . . . The fact that he did not know that any one was on the highway is no excuse for conduct which

would have amounted to recklessness if he had known that another vehicle or person was on the highway'. (*Meyers* v. *Bradford,* 54 Cal. App. 157, 159 [201 Pac. 471].) Even though the operator of an automobile may be rigidly within the law 'he still remains bound to anticipate that he may meet persons at any point of the street and he must, in order to avoid the charge of negligence, keep a proper lookout for them and keep his machine under such control as will enable him to avoid a collision with another person using proper care and caution and if the situation requires, he must slow up and stop'. (*Reaugh* v. *Cudahy Packing Co.,* 189 Cal. 335, 340 [208 Pac. 125, 127].)''

The predicament which confronted deceased is similar to that described in the case of *Reinders* v. *Olsen,* 60 Cal. App. 764 [214 Pac. 268], where the court said: ''He had little, if any time, to consider what action on his part would be most likely to safely extricate himself therefrom; and, as is succinctly stated in the instruction to which objection is made, the law does not demand that he make the best choice. It is always easy after an accident to see how it could be avoided, but a man's duty before the calamity is not measured by such *ex post facto* information.''

If, as the driver states, he was moving at the snail pace of three miles per hour, it would have been no effort at all for him to have stopped and allowed the deceased to pass before blocking his path. If he saw him and did not stop, his conduct amounted to recklessness. If he did not look when he backed into and against the line of traffic he was clearly negligent.

We feel that, under the circumstances here disclosed, the blame and responsibility for this unfortunate affair cannot justly be shifted to the man whose mouth is now closed in death. So far as this record shows, we cannot say, as a matter of law, that decedent was negligent. We hold that the trial court acted upon sufficient evidence when it found him free from negligence.

The judgment is affirmed.

A petition for a rehearing of this cause was denied by the District Court of Appeal on May 2, 1931, and a petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 1, 1931.