### St. Louis Southwestern Railway Company of Texas v. T. A. Cambron.

Decided October 27, 1910.

**1.—Trial—Amendment of Pleadings—Practice.**

When the allegations of a pleading are sufficient to admit proof of the acts of negligence alleged, they are sufficient to put the defendant on notice that plaintiff is claiming a recovery against him because of such acts, and defendant therefore can not claim surprise by the filing of an amended pleading which merely sets up with more particularity the same acts of negligence. Pleading considered and this rule applied as to an amended petition filed on the day of trial.

**2.—City Ordinance—Violation—Negligence per se.**

The violation of a city ordinance regulating the rate of speed of locomotives within the corporate limits, is negligence *per se* and will render the person guilty of such violation liable in damages to a person injured as a proximate result thereof.

**3.—Discovered Peril—Evidence.**

In a suit against a railroad company for damages for personal injuries caused by the unnecessary and continuous sounding of a locomotive whistle

whereby plaintiff's horse was caused to become frightened and run away and injure plaintiff, evidence reviewed and held to raise the issue of discovered peril and to warrant the court in submitting such issue to the jury.

#### 4.—Same.

The doctrine of discovered peril rests upon principles of humanity and public policy to prevent what would otherwise be, as far as civil liability is concerned, the licensed destruction of persons negligently exposing themselves to peril; and neither the fact that the person in peril fully realized his perilous condition, nor the fact that it was brought about by his own negligence, will warrant persons in charge of dangerous agencies (in this case a locomotive) in making no effort to avoid injuring him.

#### 5.—Same—Operation of Locomotives—Road Crossings.

When the employees of a railroad company operating its locomotives discover a person in a position of peril because of the fright of his horse, it becomes their duty to refrain from further sounding the whistle and from doing anything else calculated to add to the fright of the horse and not necessary to be done to secure the safety of the train and other persons.

#### 6.—Same—Knowledge—Charge.

Where it was shown that both the engineer and fireman saw and knew of plaintiff's perilous condition caused by his horse taking fright at the continuous sounding the locomotive whistle, the court properly refused a charge to find for the defendant if the jury believed that an ordinarily prudent person under the circumstances surrounding the engineer would have sounded the whistle as he did, because said charge required the jury to return a verdict for the defendant even though the fireman might have been negligent.

#### 7.—Railroads—Sounding Whistle—Frightening Horses—Liability.

When a horse is caused to be frightened by the unusual and unnecessary sounding of a locomotive whistle and personal injuries result, it is immaterial so far as the liability of the railroad company is concerned whether the frightening of the horse occurred before or after it had crossed the track.

Appeal from the District Court of Tarrant County. Tried below before Hon. W. T. Simmons.

*E. B. Perkins, D. Upthegrove* and *Spoonts, Thompson & Barwise,* for appellant.

*I. T. Valentine* and *McLean & Carlock,* for appellee.

WILLSON, CHIEF JUSTICE.—The appeal is from a judgment for the sum of $3500 against appellant and in favor of appellee, on account of personal injuries he alleged he had suffered as the result of negligence on the part of employees of appellant in the operation by them of one of its locomotive engines as same approached and crossed a public street within the limits of the city of Fort Worth.

Traveling in a buggy drawn by a horse along said public street, appellee crossed over appellant's track, from west to east, as one of appellant's trains approached the crossing from the north. His horse became frightened, and on account, it seems, of the breaking of the bit of his bridle, became unmanageable. To save himself from injury by the running away of the horse, appellee jumped from the buggy, and so received the

injuries of which he complained, consisting among other things of the breaking of his right leg and the mashing of an ankle.

On the day (towit, May 12, 1909) the trial of the cause was commenced, appellee filed the amended petition on which the trial was had. In this petition he alleged as the grounds upon which he claimed a right to recover against appellant, that its employees in control of the engine had been negligent in the operation thereof as it approached and passed the crossing, in that they had (1) negligently caused the whistle of the engine to sound in a violent, shrill and unnecessary manner; (2) negligently caused the engine to run at a speed of twenty miles per hour in violation of an ordinance of the city of Fort Worth prohibiting the operation within the city's limits of locomotive engines at a rate of speed in excess of six miles per hour; and (3) negligently, after discovering that appellee was in a perilous situation on account of the fright of his horse, failed to refrain from continuing to so unnecessarily sound said whistle as the engine approached and passed the crossing.

Insisting that the amended petition for the first time set up as grounds for the recovery sought, negligence on the part of its employees in operating the engine at a rate of speed prohibited by the ordinance referred to, and negligence on their part in the operation of the engine after they had discovered appellee to be in a situation perilous to him because of the fright of his horse and the approach towards him of the engine, appellant moved the court to continue the cause, to enable it to prepare to defend against the acts of negligence on the part of its employees so for the first time, as it alleged, set up by appellee. The action of the court below in refusing to sustain appellant's said motion and in forcing it to then go to trial is assigned as error.

An inspection of the record has satisfied us that the assignment should be overruled. While it is not the only one which might be advanced, a sufficient reason for holding that the trial court did not err in overruling the motion lies in the fact that the acts of negligence in question were set up in the amended petition filed October 12, 1908. It is true they were not set up with the particularity they were alleged in the amended petition filed on the day the trial began and which superseded said amendment of October 12, 1908. But the allegations in the latter amendment were sufficient, we think, to entitle appellee to offer evidence to prove such acts of negligence, and therefore sufficient as notice to appellant that appellee was claiming a liability against it on account thereof. It therefore was not in a position to claim to be surprised on account of the allegations in the last amended petition.

In the fifth paragraph of his charge the court instructed the jury to find for appellee, if they believed he had not himself been guilty of negligence, in particulars specified, proximately contributing to cause the injury he complained of, and did believe that appellant's train as it approached the crossing was running at a rate of speed in excess of six miles per hour, and that as a proximate result of such speed of appellant's train appellee's horse became frightened and unmanageable, "and that

on account thereof the plaintiff was caused to jump out and sustain injuries." Appellant's contention in its brief that there was no testimony tending to show that the train as it approached and passed the crossing was moving at a rate of speed in excess of six miles per hour, and that, therefore, the instruction was erroneous, is not supported by the record. The witness McCauley, a postal clerk on the train, testified that the train was moving fifteen, sixteen or seventeen miles per hour as it approached and passed the crossing.

The further contention made in appellant's brief that the portion of the charge referred to was erroneous because it authorized the jury to find against appellant if they believed that appellee's horse became frightened and unmanageable as a result alone of seeing the train moving at an unlawful rate of speed, we think is based upon a construction given the instruction not warranted by its language. It is not necessary to determine whether such an instruction as appellant construes the one given to the jury to be, would be erroneous or not. It is enough now to say that the court did not tell the jury to find in appellee's favor if they believed his horse as a result alone of *seeing* the train moving at a rate of speed in excess of six miles per hour became frightened and unmanageable. What he did tell them was to find for appellee if they believed the train was being operated at a speed in excess of six miles per hour and that his horse "was, as a proximate result of said speed, if any, of said train, caused to become frightened and unmanageable," etc. The jury may have believed that a train moving at the rate of fifteen miles an hour made greater or a different character of noise from that made by a train moving at a rate of six miles an hour, and that such increased or different character of noise accompanying the movement of the train, and an increased disturbance of the atmosphere which they may have believed resulted from the unlawful speed, together with sight of the train, frightened the horse.

Another contention made is that the portion of the charge referred to was erroneous in that it in effect instructed the jury that the operation of the train within the city limits of Fort Worth at a greater rate of speed than six miles per hour, because a violation of an ordinance of that city, would be negligence *per se*. That a violation of such an ordinance is negligence *per se*, which will render a person guilty of such violation liable in damages to a person injured as a proximate result thereof, is well settled by the decisions of the courts of this State. Texas & Pac. Ry. Co. v. Brown, 11 Texas Civ. App., 503 (33 S. W., 148); Gulf, C. & S. F. Ry. Co. v. Pendery, 14 Texas Civ. App., 60 (36 S. W., 794); Galveston, H. & S. A. Ry. Co. v. Vollrath, 40 Texas Civ. App., 46 (89 S. W., 283); Houston & T. C. Ry. Co. v. Blan, 62 S. W., 552; Foley v. Northrup, 47 Texas Civ. App., 277 (105 S. W., 231).

The railway tracks at the point where same crossed Second Street ran north and south. Second Street ran east and west. There were two tracks—about thirty feet apart—crossing the street. Of the two, the one farthest east was used by appellant, and the other one by another

railroad company. Appellee approached the crossing from the west. He testified that when he reached the first of the two tracks he saw an engine on the other one, 300 or 350 feet north of the crossing. When he first saw the engine he could not, he said, tell whether it was moving or not, because it was directly in front of him as he looked north. He drove on east across appellant's track, traveling, he testified, at the rate of five or six miles per hour. About the time he reached appellant's track he noticed that the engineer on the approaching engine, then, it seems, 150 to 200 feet north of the crossing, was looking directly at him. About the same time he noticed the fireman on the engine "turn to the engineer," and when he (appellee) had reached a point from five to fifteen feet east of appellant's track, the whistle of the engine began to sound, he stated. His horse, he testified, "was lunging and jumping and rearing and trying to run." Appellee further testified: "While my horse was rearing and plunging I saw the firemen at the cab window, and he seemed to be enjoying it. He was laughing heartily. He had almost his whole body out of the cab window, looking right down and he was laughing the heartiest kind. There was no abatement or stopping of the whistle during that time; it continued to sound." There was testimony tending to show that the whistling was of an unusual character for a road crossing, and there was no testimony indicating the existence of a necessity for so sounding the whistle. We think the evidence we have just called attention to—and it is by no means all there is of the kind in the record—justified the submission by the court to the jury of an issue as to discovered peril.

Appellant, however, insists that "the doctrine of discovered peril does not apply except where the injured person is oblivious to the impending danger and does not actually know of the actual presence of the dangerous agency." We do not understand the doctrine to be so limited. As applied in this State, it certainly is not so limited. It rests "upon principles of humanity and public policy," said the Supreme Court in Texas & Pac. Ry. Co. v. Breadow, 90 Texas, 31, "to prevent what would otherwise be, as far as civil liability is concerned, the licensed destruction of persons negligently exposing themselves to peril." When appellant's employees in charge of its train discovered appellee to be in a position of peril because of the fright of his horse, it became their duty to refrain from further sounding the whistle and from doing anything else calcu-lated to add to the fright of the horse and not necessary to be done to secure the safety of the train and other persons who might be using the crossing. Neither the fact that appellee may have negligently placed himself in the position of danger he occupied, by crossing the track in front of the approaching train, nor the fact that he was not oblivious to the peril threatening him, relieved the persons in charge of the engine of the duty imposed upon him. As stated, their duty arose when they discovered that appellee was in a perilous situation from which he probably could not extricate himself if they continued to sound the whistle of the engine as it approached and passed the crossing. That appellee

fully realized the perilous position he occupied, and that it may have been due to negligence on his part that he occupied it; did not license those in control of the engine to operate it without reference to results to him which might follow its operation. Texas & Pac. Ry. Co. v. Breadow, 90 Texas, 30; Gulf, C. & S. F. Ry. Co. v. Milner, 28 Texas Civ. App., 86 (66 S. W., 574); Ft. Worth & D. C. Ry. Co. v. Partin, 33 Texas Civ. App., 173 (76 S. W., 236).

Complaint is made of the refusal by the trial court to give to the jury several special charges requested by appellant. One of these was to find for appellant if they believed that an ordinarily prudent person under the circumstances surrounding the engineer would have sounded the whistle as he did. The instruction properly was refused, because it required the jury to find in appellant's favor if they believed the engineer had not been negligent, notwithstanding they might believe the fireman had been negligent.

Another of the special charges was to the effect that it was not the duty of appellant's employees in charge of the engine to keep a lookout to ascertain "whether or not an animal or animals hitched to vehicles and that had crossed (the track) would be frightened and caused to run away by the presence or noise of such train." The requested instruction ignored testimony tending to show that the whistling complained of was of a character unusual at such crossings, and on the occasion in question was unnecessary. Texas Cent. Ry. Co. v. Boesch, 103 Texas, 256.

The remaining refused instruction was to the effect that if appellee struck his horse with a whip about the time he crossed appellant's track, and his so striking the horse caused him to run away, etc., the verdict should be in appellant's favor. As requested, the instruction, had it been given, would have been misleading. The jury might have believed that the striking of the horse was a cause and that the negligent operation of the train was also a cause of the running away of the horse. Nevertheless, and without reference to whether the striking of the horse under the circumstances was negligence or not on the part of appellee, the instruction would have required them to find in appellant's favor.

The sufficiency of the testimony to support a verdict and judgment in appellee's favor for any sum, and, if for any sum, for as great a one as that found by the jury, is questioned by appropriate assignments. The testimony was conflicting on the issue as to liability on appellant's part to appellee on account of injuries he suffered. It was the province of the jury to weigh the testimony and declare the truth as they found it to be between the parties. We can not say that the conclusion reached by them that appellant was liable as claimed by appellee, appears from the testimony in the record to be erroneous. Nor can we say that the sum found by them in appellee's favor is excessive. There is testimony in the record which the jury had a right to believe, and which we have no right to ignore in disposing of these assignments, sufficient to support their findings both as to liability and as to the amount of damages.

Other objections to the judgment urged in appellant's brief have been

considered, but we are of the opinion that none of them furnish a reason for setting it aside. The judgment, therefore, is affirmed.

*Affirmed.*

Writ of error refused.