[Civ. No. 4068. Third Appellate District.—May 15, 1930.]

JORDAN L. SMITH, Respondent; AMERICAN RAILWAY EXPRESS COMPANY (a Corporation), Intervener and Respondent, v. LOS ANGELES RAILWAY (a Corporation) et al., Appellants.

658

Gibson, Dunn & Crutcher, Norman S. Sterry, Philip C. Sterry, Leroy M. Edwards and Malcolm Davis for Appellants.

William C. Ring, Carl W. Faucett, Newlin & Ashburn and Clive W. Johnson for Respondents.

TUTTLE, J., *pro tem.*—This is an action brought to recover damages for personal injuries alleged to have been inflicted through the operations of defendant Railway Company's street-car. The jury returned a verdict in favor of defendant. A motion for new trial was made and granted upon the sole ground that the court had erred in refusing to give the following instruction:

"You are instructed that though the plaintiff and defendants were each guilty of negligence, if the defendants had the last clear chance of avoiding injury to plaintiff by the exercise of reasonable care and failed to do so, defendants are liable. The ground of liability presupposes the negli-

gence of plaintiff resulting in his being placed in a situation of danger from which he could not escape by the exercise of ordinary care; that defendants were aware of plaintiff's dangerous situation under such circumstances that they realized, or ought to have realized, his inability to escape therefrom; that defendants then had a clear chance to have avoided injuring plaintiff by the exercise of ordinary care, and failed to do so. For this ground of liability to exist it need not appear that it was physically impossible for plaintiff to have escaped danger, but it is sufficient in this connection if it appears that plaintiff was unaware of the danger and for that reason was unable to escape it. If you find that the foregoing grounds of liability exist here, you are instructed that defendants had the last clear chance of avoiding the injury to plaintiff, and your verdict should be for plaintiff.''

It is first contended by appellants that this instruction was properly rejected because it is an incorrect statement of the law. No authorities were cited by appellants upon this question. The objection is without merit. (*Palmer* v. *Tschudy*, 191 Cal. 696 [218 Pac. 36].)

The question next presented is whether or not the evidence in the case justified the giving of an instruction upon the doctrine, the ''last clear chance.''

The injury was received at the intersection of Santa Fe Avenue and Third Street, in the city of Los Angeles. The former street runs north and south, while Third Street runs east and west, and terminates at the said intersection. It was about 5:15 P. M.; the weather was clear and one could see several blocks away. At the point where the collision occurred, defendant Railway Company maintains a single street-car track, upon which is operated a one-man car, commonly known as a ''dummy.'' Plaintiff was a driver for an express company. His wagon weighed some 4,000 pounds, and was about 24 feet long from end of pole to end gate. The horses and pole or tongue extended some 10 feet beyond the bed of the wagon. The point where the collision occurred was a very busy one, so far as vehicular traffic was concerned. Opposite the point where Third Street intersects Santa Fe Avenue is the express depot of the Railroad Company, and this depot was the objective of plaintiff on the day of the accident. All such traffic had to cross the

said track of the defendant in reaching said depot. The distance from the west line of Santa Fe Avenue to the car tracks is some 45 feet. Plaintiff drove his wagon easterly along the south side of Third Street and, entering said intersection, approached and drove upon the car track. His wagon was struck at the front wheels, breaking the king-bolt and severing the vehicle completely. Plaintiff was thrown to the ground and received the injuries complained of. The view of the street-car conductor was unobstructed for several blocks as he approached Third Street. There is no evidence that he was distracted by any unusual occurrences while he was operating his car for the distance mentioned. As far as the record shows, he was engaged solely in operating the car during that time. He testified that he could see at least 150 feet ahead, but that he did not see the wagon until the horses were on the tracks, some 30 feet away. He said that he could stop his car within a distance of 70 feet. The horses could have been stopped (so plaintiff testified) within a distance of a foot. The wagon had proceeded some 10 or 12 feet over the west rail before it was struck. There was no evidence that plaintiff saw the street-car or its light at any time. The foregoing *résumé* of the testimony and evidence comprises that which was not disputed and, also, that most favorable to plaintiff. Other witnesses testified in behalf of plaintiff, but their testimony had little or no bearing upon the question here presented.

The doctrine of "last clear chance" has occasioned more discussion in our legal reports than any other phase of the law of negligence. It has been referred to as a humanitarian doctrine (20 R. C. L., 139; *Hamblin* v. *Schultis,* 64 Cal. App. 104 [220 Pac. 320]), for the reason that it permits one to recover, though his negligence may have contributed to the injury, and forbids exoneration to the other party who, notwithstanding such contributory negligence still persists in a course of conduct which results in the injury. As a concise statement of this doctrine in its elemental and primary form, there is no better statement than that found in the case of *Townsend* v. *Butterfield,* 168 Cal. 564 [143 Pac. 760, 762], where the court approved of the following instruction: "You are instructed that the party who has the last chance to avoid the accident, notwithstanding the previous negligence of his opponent, is considered solely responsible."

While the court, in that case, referred to this instruction as "extremely bare and terse," it has the advantage of being readily understood and comprehended by the average layman. Upon this logical, clear and understandable statement of the rule we have engrafted various "elements," "exceptions" and "qualifications" until we have become enmeshed in a maze of superrefinements. For instance, we tell the jury that there can be no recovery under this doctrine, unless plaintiff is negligent. We then proceed to tell them (under the rule of concurring negligence), *that if the plaintiff is negligent (down to and at the precise time of the impact), he cannot recover.* The abolition of the jury system is the theme of nearly every exponent of legal reforms, but what can be expected of twelve laymen who are forced and expected to absorb and reconcile, in a half hour, involved and intricate legal questions upon which neither judges nor lawyers can agree? A very similar condition prevailed in respect to the instruction upon reasonable doubt in criminal cases, and so urgent was the necessity for clarification, that the legislature intervened and laid down a terse definition of "reasonable doubt," with the positive injunction that no further instruction was required. ▮ And in this case defendant relies upon a necessary "element" of the rule under consideration, to the effect that the party inflicting the injury must have had actual knowledge of the perilous position of the party injured, in sufficient time to have avoided the injury. The motorman testified that he did not see plaintiff on the tracks until the car was within some 30 feet of the wagon, and that the horses were then upon the track. It is contended that there is no other evidence in the record which would justify a contrary finding. The track, for some blocks leading to Third Street, was straight; one could see for several blocks; the motorman himself admitted he could see for some 150 feet ahead. He was sitting on his chair at the front of the car, with his hand on the control, for several hundred feet while approaching the scene of the injury. The wagon was moving at the very slow speed of three miles per hour. The car was moving about eight times as fast, or some 25 miles per hour. The wagon had proceeded some 12 feet into the path of danger before being struck. Under all the circumstances and conditions as disclosed by the record the jury might have found that the motorman saw

plaintiff in time to have avoided the injury, and while plaintiff was actually in peril. (*Hoy* v. *Tornich,* 199 Cal. 545 [250 Pac. 565]; *Darling* v. *Pacific Electric R. Co.,* 197 Cal. 702 [242 Pac. 703].)

Another situation which appellant contends should bar plaintiff from the benefit of the rule is where the negligence of the injured party was contemporaneous, concurrent, continuing and contributory with the negligence of the party inflicting the injury. (*Young* v. *Southern Pac. Co.,* 189 Cal. 754 [210 Pac. 259].) The law is well settled in this state that the rule cannot be applied to a situation where the negligence of the deceased continued to the moment of the impact and actively contributed to his own injury. The injured party being actively and contemporaneously at fault until the moment of the collision, he is barred from the right to recover for any act up to that time. (*Green* v. *Los Angeles T. Ry. Co.,* 143 Cal. 31, 41 [101 Am. St. Rep. 68, 76 Pac. 719].) The liability is placed upon the party inflicting the injury only if, immediately before the actual infliction of the injury, the injured party was in such a situation as to be unable, by the exercise on his part of reasonable and ordinary care to extricate himself, and vigilance on his part would not have averted the injury. (*Young* v. *Southern Pac. Co., supra.*) In other words, the "last clear chance" must be solely upon the part of the person inflicting the injury. If both parties have that chance it cannot be said that there is any "last clear chance" at all. However, if plaintiff was oblivious to or unconscious of his position of danger, the question of his duty to extricate himself does not arise, and the doctrine is applicable. The law in this respect is laid down in the case of *Berguin* v. *Pacific Electric Ry.,* 203 Cal. 123 [263 Pac. 220, 223], as follows: "The sum of the adjudicated cases bearing upon the relative rights of street cars and citizens traveling in vehicles drawn by horses or other animals is that both have a right to use the street, but neither has the exclusive right. The motorman of a street car is not necessarily obliged to stop his car when he sees a man driving a vehicle along the line of a railway ahead of the car, but he may continue to run the car in a proper manner until he is conscious of the fact that the driver is unaware or heedless of his danger. . . . Seeing a man driving along

the track, the motorman may assume that he will turn aside and out of the way of the car, but he cannot rest upon the assumption so long as to allow his car to reach a point where it will be impossible for him to control his car or give warning in time to prevent injury to the man or vehicle.''

We are satisfied that there is evidence in the record from which a jury could reasonably conclude that although plaintiff realized he was in a dangerous position, extrication was physically impossible, or they could have found that plaintiff was oblivious to or unconscious of his position of peril. The car was approaching at a speed of 25 miles per hour, while the wagon as it started across the tracks, was moving at the rate of three miles per hour. What method of escape was open to plaintiff? He could either back his team or attempt to accelerate his speed ahead. With a wagon weighing two tons and the car approaching at the rate of 35 feet a second, the jury might well have found that when plaintiff had partly crossed the track he had reached a point where he could not help himself, and from that time on vigilance on his part would not have averted the injury. His negligence in reaching that position becomes the condition, not the proximate cause, of the injury. If we are to retain the humanitarian aspect of this doctrine, we are impelled to the conclusion that it is applicable to the facts of this case.

The learned trial judge did not err in granting the motion for new trial. It follows that the order granting a new trial must be and said order is affirmed.

Plummer, J., and Finch, P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on June 14, 1930, and a petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 14, 1930.