[Civ. No. 1745. Fourth Appellate District.—July 10, 1936.]

H. B. RASMUSSEN, Respondent, v. FRESNO TRACTION COMPANY (a Corporation) et al., Appellants.

358

W. H. Stammer, Galen McKnight, Everts, Ewing, Wild & Everts, A. W. Carlson and Richard H. Reeve for Appellants.

David E. Peckinpah and Harold M. Child for Respondent.

BARNARD, P. J.—The plaintiff was injured in a collision between an automobile driven by him and a street car owned by the defendant company and operated by the defendant Zoerb. The accident occurred in the country near the city of Fresno at a point where West Avenue crosses a private right of way maintained by the Traction Company, upon which there are double tracks. The collision happened about noon while the plaintiff was driving south on West Avenue and the street car was proceeding east on the southerly of the two tracks. The country was open and either vehicle could be seen from the other for a distance of many hundred feet. On a former appeal (*Rasmussen* v. *Fresno Traction Co.*, 138 Cal. App. 540 [32 Pac. (2d) 1091]) a judgment for $2,000 in favor of the plaintiff was reversed. On a retrial a jury awarded the plaintiff $15,000, and from the judgment which followed the defendants have appealed.

The main ground for reversal urged by the appellants is that the doctrine of last clear chance is not applicable under the facts shown, and that the court erred in submitting that issue to the jury. While the respondent concedes that he was guilty of contributory negligence as a matter of law he insists that he was entitled to have the last chance issue

submitted to the jury under our decision on the former appeal, and that this has become the law of the case.

■ Since the doctrine of the law of the case rests upon the existence of error it is not favored and it rarely applies to matters of evidence. (*Allen* v. *Bryant*, 155 Cal. 256 [100 Pac. 704].) The doctrine will not apply where a substantial difference appears in the evidence on the second trial. (*Dewees* v. *Kuntz*, 130 Cal. App. 620 [20 Pac. (2d) 733]; *Sichterman* v. *R. M. Hollingshead Co.*, 117 Cal. App. 504 [4 Pac. (2d) 181].)

■ In our former opinion, the evidence was thus summarized:

"Respondent testified that he lived on a chicken ranch about a mile north of the intersection; that at about 11:30 o'clock on the morning of February 22d he left his home in his automobile to deliver half a case of eggs to a customer on Belmont Avenue, a short distance southerly from the intersection; that the eggs were in a packing case resting on the floor between the front and rear seats of the automobile; that he had traveled over the intersection a great many times and was familiar with it; that he drove southerly on West Avenue at a speed of about fifteen miles an hour; that when he was at a point about ten feet northerly from the southerly tracks he brought his automobile almost to a stop and shifted into second gear; that he looked in both directions for approaching cars; that none was approaching from the east but that the car involved in the accident was about three hundred feet westerly from the intersection and traveling easterly on the southerly tracks; that he did not know the speed at which the street car was traveling; that believing he could cross safely he proceeded at a speed of about five miles per hour without again looking at the approaching street car; that while traveling in second gear at a speed of five miles an hour he could have stopped his automobile almost instantly; that the crossing was rough and he continued at the rate of five miles an hour in order to keep from breaking the eggs; that the street car struck the rear of his automobile, practically demolishing it and seriously injuring him. The forward eight feet of the automobile was not injured in the collision.

"Zoerb testified that he was proceeding in an easterly direction on the southerly tracks of the Traction Company's

right of way at a speed of twenty miles an hour; that he was making change for a passenger; that when this was completed he was about seventy-five feet from the crossing; that he then looked ahead and saw respondent's automobile traveling southerly on West Avenue at a point about one hundred twenty-five feet from the intersection and at a speed of from thirty to thirty-five miles per hour; that he proceeded on his way and when the street car was about thirty feet from the oiled portion of the intersection the automobile was traveling southerly without reducing its speed; that he then for the first time realized that respondent was intending to proceed across the intersection and that a collision was imminent; that he applied his air brakes, rang the gong of the street car but could not stop and the collision ensued; that the street car traveled forty feet after it came into contact with the automobile.''

Zoerb also testified on the first trial that he did not apply his emergency brakes at the time he applied his air brakes.

While most of the evidence on the second trial is about the same as that just given, certain changes and additions now appear. On the second trial the respondent testified that the place where he changed to second gear and saw the street car coming was 10 feet north of the first rail of the northerly track, which would be some 10 feet farther away from the track on which the street car was coming; that when he observed the street car it was between 200 and 300 feet away; that he proceeded across the tracks at five miles per hour or less; that at the speed at which he was going he could have stopped his automobile immediately; and that on the morning of the accident he was familiar with the warning signs at the approach to this railroad crossing. At the second trial the motorman testified not only that he rang his gong but that he kept ''hammering'' it from the time he first saw the automobile until it was too late to avoid the accident. While he again testified that he applied his air brakes when he was about 30 feet from the crossing, there was also considerable evidence at the second trial to the effect that another brake, called the emergency brake, which he did not apply, was for use only when the air was not working; that it could not be used at the same time the air was being used; and that the air brake which he applied was the most efficient way to stop the car.

There was also evidence that the street car in question weighed 16 tons; that at a speed of 20 miles an hour it would travel 29.2 feet per second; that at five miles per hour a car would travel 7.3 feet per second; that at 20 miles per hour this street car could not be stopped in less than 75 or 80 feet; and that after the collision the street car did not stop until it was 40 feet beyond the east line of the intersection.

An exceedingly close case was presented on the former appeal and in view of the new evidence, that the street car was not actually stopped until it had gone 70 feet, plus the width of West Avenue, after the motorman realized that a collision was imminent, that he used the best brake he had, that the respondent was farther away when he saw the street car, and that under his own testimony the street car may have been 100 feet nearer when he saw it, it cannot be said that the evidence on the two trials was identical and, in our opinion, the doctrine of the law of the case should not be here applied. The new evidence affects the ability of the motorman to stop his car after he actually saw the respondent's automobile and also affects the question of the ability of the respondent to avoid the accident after he saw the approaching street car. Under the new evidence a somewhat different question is presented as to whether the jury could reasonably have concluded that Zoerb, when he first saw the automobile when 75 feet from the intersection, also realized at that time that a collision was imminent and that the respondent could not extricate himself, and that he could then have applied his brakes in time to avoid the accident. A somewhat different question is also presented as to the ability of the respondent to have avoided the accident by the use of ordinary care when he observed the street car while he was about 10 feet farther from the tracks upon which it was running and when, under his own testimony, it may have been 100 feet closer when he observed it. If it might be held, under the evidence produced at the first trial, that his position on the northerly rail, when he saw the street car, was so close to the danger as to give him no chance to observe its speed or to act quickly enough to avoid the collision, the evidence on the second trial presents a difference which is substantial and which both justifies and demands serious consideration.

■ As has frequently been said, the doctrine of the last clear chance means exactly what the words imply and the essence of the rule is that it is applicable only where the defendant, notwithstanding the plaintiff's negligence, has a clear chance, after realizing that the plaintiff cannot escape, to avoid the accident by the exercise of ordinary care, and where the plaintiff cannot avoid it by the use of such care.

In applying the rule in certain cases the courts have used language which has led to some confusion and perhaps to some modification. While it has always been held that the rule did not apply unless the defendant actually knew that the plaintiff was in a position of danger it has more recently been held that the jury is not required to take the defendant's word that he did not see but that, under proper circumstances, the jury may find that he did see, and that the jury, having found on proper evidence that he actually saw, may infer that he should then have known that the plaintiff could not escape. Even more recently it has been held that where a plaintiff is unaware of the situation or oblivious to his danger, this is equivalent, for the purposes of the rule, to a physical inability to escape. While the law is and should be that a defendant who has a clear opportunity to do otherwise may not run down and injure a plaintiff merely because the latter is unaware of his dangerous position, we cannot agree that this humanitarian doctrine has been, or should be, so modified as to permit it to be used to reward a plaintiff for disregarding what he did see, where he had a better chance to avoid the accident than had the defendant, and under circumstances where it must be said, in all fairness, that any finding that the defendant had a clear chance to avoid the injury, and the plaintiff had none, must rest more upon the whim or prejudice of a jury than upon the actual facts shown by the evidence.

In several of the more recent cases the fact that the plaintiff was unaware of his position of peril has been considered. The last chance doctrine was applied where a street car ran down a plaintiff who was walking along the car tracks in a city (*Darling* v. *Pacific Electric Ry. Co.*, 197 Cal. 702 [242 Pac. 703]) and where a plaintiff was driving along a street car track on a city street. (*Berguin* v. *Pacific Elec. Ry. Co.*, 203 Cal. 116 [263 Pac. 220].) In *Girdner* v. *Union Oil Co.*, 216 Cal. 197 [13 Pac. (2d) 915], the doctrine was applied

to a truck driver who observed that the plaintiff did not look in his direction and under circumstances where the defendant unquestionably had an ample opportunity to avoid the accident by stopping or turning aside. In *Center* v. *Yellow Cab Co.*, 216 Cal. 205 [13 Pac. (2d) 918], the defendant cab driver, proceeding in second gear at 10 to 14 miles an hour, saw when he was 20 feet away that the plaintiff pedestrian was looking in the opposite direction and was totally unaware of his approach. In *Smith* v. *Los Angeles Ry.*, 105 Cal. App. 657 [288 Pac. 690], the plaintiff was driving a long heavy wagon across the street car tracks at an intersection of city streets. There was no evidence that the plaintiff had seen the street car and the circumstances were such that the motorman must have seen the wagon and must have known that the same could not be speeded up in time to avoid a collision. In *Handley* v. *Lombardi*, 122 Cal. App. 22 [9 Pac. (2d) 867], the plaintiff, driving a truck, stopped before entering a street intersection. He then saw the defendant's automobile approaching from his right about 300 feet away but proceeded to cross the intersection at a speed of 10 or 12 miles per hour. His truck was struck in the rear when it had almost cleared the intersection. It not only appeared that the defendant must have seen the truck but that he had ample opportunity to avoid a collision by slowing down or turning aside. In all of the above cases it clearly appeared that the defendant had an ample opportunity to avoid the accident by the use of ordinary care, and there was at least some evidence justifying the inference that the plaintiff had no such opportunity. Moreover, all of these cases involved accidents on city streets.

We are here concerned with a different situation involving street car tracks on a private right of way outside of a city. Different rules of law are applicable to such a situation which directly affect the conduct of both parties to this accident. The rules applicable to a crossing over the tracks of a steam railway applied here and imposed upon the respondent the duty to look, to listen, to stop if necessary, and to yield the right of way to an approaching car, whereas the motorman had the right to presume that the other would perform this duty, and was not bound to check the rightful speed of the street car until he had reason to believe that

the other was not going to stop. (*Billig* v. *Southern Pacific Co.*, 192 Cal. 357 [219 Pac. 992].)

In *New York L. Oil Co.* v. *United Railroads*, 191 Cal. 96 [215 Pac. 72], the facts were very similar to the instant case. When the plaintiff was 25 feet from the track he observed the electric car approaching 500 feet away but proceeded to cross the tracks at five miles per hour at which speed he could have stopped within three feet. The court in holding the plaintiff guilty of contributory negligence pointed out the well-known rules governing railroad cases and observed that the plaintiff, although fully aware of the approach of the car, closed his eyes to the danger necessarily involved and blindly drove into the path of the oncoming car. In holding that the doctrine of last clear chance did not apply to such a situation the court said:

"It is a well-settled rule in this state that this doctrine is only applicable to a defendant who actually perceived the predicament and danger of a plaintiff in time to have avoided the accident by the exercise of due diligence. A defendant cannot be held liable upon the theory that he would have discovered the peril of the other but for remissness on his part. (*Herbert* v. *Southern Pacific Co.*, 121 Cal. 227 [53 Pac. 651] ; *Harrington* v. *Los Angeles Ry. Co.*, 140 Cal. 514 [74 Pac. 15, 98 Am. St. Rep. 85, 63 L. R. A. 238] ; *Thompson* v. *Los Angeles etc. Ry. Co.*, 165 Cal. 748 [134 Pac. 709] ; *Tucker* v. *United Railroads*, [171 Cal. 702, 154 Pac. 835] *supra.*) Conceding, however, that the motorman, while he was yet some distance from the point of collision, was aware of the approach of the truck, nevertheless it is an undisputed fact that the driver of the truck was likewise aware of the approach of the car, and that he could have brought the truck to a standstill within a distance of three feet. There was a concurrent duty, as a matter of law, upon the part of the driver of the truck to stop, if possible, before the actual collision occurred. Obviously the truck proceeding at the slow rate of speed mentioned, and with the ability to stop within the short distance of three feet, had the greater opportunity to avoid the collision. And so long as the negligence of the driver of the truck in continuing on in his course to the point of crossing the tracks of the defendant was contemporaneous and concurrent with that of the defendant's

motorman, plaintiff cannot rightfully rest its case upon the doctrine of last clear chance.''

In *Bagwill* v. *Pacific Electric Ry. Co.*, 90 Cal. App. 114 [265 Pac. 517], another case somewhat similar in its facts, there was evidence that the plaintiff's truck was coming up to the track when the electric cars were 300 feet away and that it started on the tracks when the cars were 150 feet away and that the motorman so applied his brakes that they took effect about 75 feet from the point of contact. In holding that the doctrine of last clear chance was not applicable the court said:

''It would be and is a matter of common knowledge that even if we assume that thought and action were simultaneous on the part of the motorman, it would take a little time for the brakes to take hold after the motorman had operated whatever mechanical devices were employed to effectuate the braking. The truck was at no time stalled on the track, but was moving all of the time and was unloaded; and it is a fair inference that with knowledge of the train's approach, if the driver attempted the crossing, as he did, he would be able to negotiate the passage in safety. It was probable that even then he could have accelerated his pace and gotten safely over. (*Young* v. *Southern Pacific Co.*, 182 Cal. 369, 380 [190 Pac. 36].)

''We have a four-car train moving 45 miles per hour on its own right of way. The motorman is confronted with a situation which requires his action to avoid striking an object within 150 feet. The situation calling for immediate action is brought about through no fault of the motorman. Within 75 feet he has applied all of his brakes sufficient to cause the train to slide. This means that he has brought about the brake application within practically one second of time. Certainly the doctrine of last clear chance never meant a splitting of seconds when emergencies arise. There seems still to be some misconception of this doctrine of last clear chance. It was not devised as a last resort to fasten liability on defendants. Like the body of the law of negligence, to which the doctrine is appended, the test remains as that of ordinary care under all of the circumstances. The law in many of its workings indicates great charity and solicitude for individual rights. It says to a negligent plaintiff that in spite of his lack of caution he will be protected against wanton, wilful or avoidable harm. But, on the other hand,

it penalizes no innocent person. We are not to tear down the facts of a case and rebuild the same so that, by a trimming down and tight-fitting operation, something can be constructed upon which may be fastened the claim of last clear chance. The words mean exactly as they indicate, namely last *clear* chance, not possible chance. The Supreme Court has not left us to speculate on the application of the doctrine. (*Palmer* v. *Tschudy,* 191 Cal. 696 [218 Pac. 36]; *Young* v. *Southern Pacific Co.,* 182 Cal. 369 [190 Pac. 36]; *Wallis* v. *Southern Pacific Co.,* 184 Cal. 662 [195 Pac. 408, 15 A. L. R. 117]; *Gainer* v. *United Railroads,* 58 Cal. App. 459 [208 Pac. 1013].)''

In *Young* v. *Southern Pacific Co.,* 189 Cal. 746 [210 Pac. 259], the court said:

''Obviously, if both parties to an accident could, by the exercise of ordinary care, have avoided it, neither can be said to have had the last clear chance. It is only when a defendant charged with the negligent infliction of the injury, knowing plaintiff's peril, could and the injured plaintiff could not have avoided the injury that the defendant is liable. The liability is placed upon the party inflicting the injury only if immediately before the actual infliction of the injury the injured person was in such a situation as to be unable by the exercise on his part of reasonable and ordinary care to extricate himself and vigilance on his part would not have averted the injury. . . .

''The plaintiffs having failed to show in evidence that the deceased could not have altered the direction, stopped, retarded or accelerated the speed of his motorcycle after the train crew first saw him on the passing track and thereby, of his own endeavor, have avoided the accident, it must be held that the negligence of the deceased was contemporaneous, concurrent and continuing down to the very moment of the collision. This being so, the plaintiffs failed to support the burden of proof put upon them by the law to show, as part of their case in chief, that the defendant had the last clear chance to avoid the accident.''

In *Gundry* v. *Atchison, T. & S. F. Ry. Co.,* 104 Cal. App. 753 [286 Pac. 718], this court said:

''It would be little short of ridiculous to hold that the law requires a traveler to look and listen, and even to stop, if necessary, at a railroad crossing, in order to ascertain if a

train is approaching, but does not require such a traveler to refrain from attempting to cross in front of the train, when he actually sees it approaching. The United States Supreme Court in the case of *Baltimore & Ohio R. R. Co.* v. *Goodman*, 275 U. S. 66 [48 Sup. Ct. 24, 25, 72 L. Ed. 167, 56 A. L. R. 645], said:

" 'When a man goes upon a railroad track he knows that he goes to a place where he will be killed if a train comes upon him before he is clear of the track. He knows that he must stop for the train, not the train stop for him.' "

If it be conceded that such cases as those first above cited on this subject have somewhat modified the last chance rule, by extending the theory that a plaintiff might be held unable to escape because he was oblivious to his danger at the last minute although he had theretofore seen the other vehicle approaching, no such modification has ever been applied in any other case of a railroad operating on a private right of way outside of a city and, in our opinion, the same should not be so extended as to do away with the established and salutary rules laid down in the last line of cases referred to and in many other cases to the same effect. In such a case as this a motorman has a right to assume that the driver of the automobile will stop. His street car is heavier and cannot turn aside and he may reasonably, and naturally will, delay stopping in the belief that the other will stop or will get across the track. There is naturally a much shorter time during which it is possible for him to see and realize that the other is not going to stop and cannot get across, since the other may come very close before stopping and if he does not stop may speed up to get across. The very fact that a motorist slows down almost to a stop when about 20 feet away, as the respondent did here, is apt to lead the motorman to believe that the motorist is going to stop, and would naturally tend to delay his application of the brakes. On the other hand, the driver of the automobile not only has the duty to stop but in his lighter and quicker vehicle has much more of an opportunity to stop or to speed up. Even after the respondent failed to stop the slightest exercise of care on his part would have enabled him to avoid the accident by a very slight increase in speed which would have been easily possible at the rate he was going.

■ In determining whether the doctrine of last clear chance is applicable the test is whether, when both parties have been negligent, the plaintiff has ceased to have the power to prevent the accident and the defendant may still do so by exercising ordinary care. (*Darling* v. *Pacific Electric Ry. Co., supra.*)

Applying this test here we conclude that the court erred in submitting the issue of last clear chance to the jury. Zoerb testified that he was making change for a passenger and that he did not see the automobile until he was 75 feet from the crossing. Later he said he did not measure it and it might have been "say 100 or 75". A passenger on the car testified that while the motorman was so making change she saw that the automobile was not going to stop but that it was then too late for her to call out a warning. It is apparent from the evidence that the street car must have been about 75 feet from the crossing at the time the respondent was about 22 feet away, since it would have taken each about three seconds to reach the point of impact at the rate they were traveling. There is no direct evidence that Zoerb saw the automobile until he was about 75 feet from the crossing. The evidence would not support an implied finding that he actually saw it earlier. In view of the evidence that the motorman was making change and did not see the respondent until he was some 75 feet from the crossing, that it would take 75 or 80 feet to stop the street car when the brakes were applied, that it would take an appreciable time after the motorman determined to apply the brakes before they would take effect, and that the respondent slowed down to five miles an hour or less when he was about 20 feet from the tracks on which the car was coming, the jury was not entitled to draw the inference either that Zoerb actually saw the danger when he was farther away, or that he should have realized when he was 75 feet away that the respondent was then in a position of danger from which he could not escape or that he could and should have then stopped in time to have avoided the accident. Further, if it could be held under the evidence that the motorman had any chance to stop after he realized the danger it must inevitably be held that the respondent not only also had a chance but that he actually had a better chance to avoid the collision. When he was some 20 feet from the point of impact he observed the oncoming car

which, according to his own evidence, may have been not more than 200 feet away. Without knowing how fast the car was coming he slowed down to five miles an hour or less and, changing to second gear, proceeded across the tracks without stopping or increasing his speed. Under such circumstances the theory that he was oblivious to his danger because he did not again look toward the street car cannot be invoked to show his inability to escape, and his negligence was not only continuous to the last but was the proximate cause of his injury. There was neither evidence justifying an inference that the respondent was unable to escape from his position of peril nor that the motorman had a clear opportunity to avoid the accident. ▮ The doctrine of last clear chance was never intended to protect a plaintiff from what amounts to suicidal recklessness and it should not be thus extended. Regardless of any other consideration it fully appears that the respondent, right up to the moment of the impact, had not only a chance but the better chance to avoid the accident.

The views above expressed make it unnecessary to consider the other points raised.

The judgment is reversed.

Jennings, J., concurred.

MARKS, J., Dissenting.—I dissent.

While I believe that the able and logical opinion written by Mr. Presiding Justice Barnard and concurred in by Mr. Justice Jennings correctly states the law applicable to the facts of the instant case as that law was announced a number of years ago and as I still believe it should exist, I cannot agree with my associates that the opinion is in accord with the present conception of the law of negligence, contributory negligence and the doctrine of the last clear chance as applied by the courts in the more recent cases. I agree with my associates that our prior decision (138 Cal. App. 540 [32 Pac. 1091]) has not established the law of the case on this appeal.

The doctrine of the last clear chance is not of recent origin. (*Butterfield* v. *Forrester*, 11 East, 60 [103 English Reprint, 926] ; *Davies* v. *Mann*, 10 Mees. & W. 545 [152 English Reprint, 588].) It is a humanitarian doctrine adopted so as not to defeat a claim for damages by a plaintiff who was guilty

of negligence in the first instance in placing himself in a position of danger from which he could not extricate himself by the use of ordinary care and was injured by a defendant who saw him in his position of danger and realized or should have realized his inability to escape, the defendant having the last clear chance of avoiding the injury by the use of ordinary care. This seems to be the most widely accepted rule though it has been varied by additions or subtractions in some jurisdictions.

The reasons for the rule and the conditions under which it may be applied have been variously stated and defined. The basic reasoning of the cases supporting the doctrine of the last clear chance as announced in the greater number of jurisdictions is that while the plaintiff may in the first instance be guilty of negligence in entering a place of danger, the negligence of the defendant in failing to avoid the injury, after realizing the danger and the inability of the plaintiff to escape, when defendant may avoid the injury by the use of ordinary care becomes the proximate cause of the injury and the prior negligence of the plaintiff a remote cause or a condition and not a proximate cause. (45 C. J. 989.) This reasoning was recognized in the case of *Girdner* v. *Union Oil Co.*, 216 Cal. 197, where at page 203 [13 Pac. (2d) 915], it was said:

"The element of continual negligence is present in all last-chance cases. If defendant is not able to avoid injuring plaintiff in the exercise of ordinary care, the plaintiff's original negligence continues to be the proximate cause of his own injury, which bars recovery. If, on the other hand, defendant is able to avoid injuring the negligent plaintiff, and negligently fails to do so, plaintiff's original though continuing negligence only remotely contributes to the injury and is not the proximate cause thereof, and hence the applied doctrine, by its own principles, establishes the right of plaintiff to recover notwithstanding the fact that his original negligence would, by its continuing nature, bar a recovery if the doctrine were not applicable. To hold otherwise would be to dispute its existence."

(See, also, *Center* v. *Yellow Cab Co.*, 216 Cal. 205 [13 Pac. (2d) 918].) I take it that this does not modify but merely tends to explain the rule long applied in California that where the negligence of plaintiff continues up to the moment

of impact and is actively concurrent and contemporaneous with the negligence of defendant, plaintiff cannot recover. I take it that this last-stated rule is still in effect and that the quotation from the Girdner case merely illustrates circumstances under which the doctrine of concurrent and contemporaneous negligence will not be applied. If this were not true and the quotation states a rule, its loose application will lead to permitting juries to compare the negligence of both parties and apply the doctrine of comparative negligence.

In California there has been a growing tendency to leave questions that were once considered questions of law for the court to the jury for determination as questions of fact. This is true in cases where a plaintiff is proven guilty of negligence *per se* or negligence as a matter of law. Generally speaking, the question of whether or not such negligence contributed to his injuries is now regarded as a question of fact to be decided by the jury. The same is true of proven negligence of a defendant and the question of its proximate cause of injury and in cases under the doctrine of the last clear chance. In 19 California Jurisprudence, page 656, it is said: "A person causing injury may not rely upon dullness to excuse him from not realizing the dangerous position of another. One who sees the situation of another person must use reasonable diligence in analyzing the situation, and knowledge of danger is imputed where the circumstances are such as to convey to the mind of a reasonable man that the plaintiff is in a position of peril. Ordinarily it is a question for the jury whether or not a defendant apprehended the dangerous position of the plaintiff." In the same volume, at page 732, we find the following:

"The proximity of one fact to another in a case, and their relation and sequence to each other, is essentially within the province of the jury to determine. Whenever the injury complained of is the result of a series of acts that are interlinked or dependent upon each other, the certainty that the final act is the result of a prior one diminishes in proportion to the remoteness of the first act from the result, and the jury must determine whether the several acts constitute such a successive series, or are linked together so as to form one continuous whole, or whether they are so independent that the result cannot be said to be the natural consequence of the first. . . . Likewise, it is for the jury to determine whether

the circumstances of a case are such that the doctrine of last clear chance comes into operation.''

This last statement is subject to the qualification that when the evidence contains no conflicts and no conflicting inferences may be drawn from it the question may be one of law for the court. Without taking time to analyze the cases, it is sufficient to say that those cited in the notes to the text and in corresponding sections of the ten-year supplement support the rules announced by the text writer.

It is also the established law in California that a jury is not bound to accept as true the testimony of a defendant as to just when and where he first saw the plaintiff in a position of danger or when or where he first realized or should have realized that the plaintiff was in a position of peril from which he could not extricate himself by the use of ordinary care if there is other evidence, direct or circumstantial, from which a contrary conclusion may reasonably be drawn.

With these rules of law in mind it is necessary for me, to explain my dissent, to analyze evidence which seems to me to be controlling and which appears unimportant to my associates.

The evidence of Zoerb, the motorman of the ''one-man car'' involved in the accident, is sufficiently detailed in the opinion in chief. This leaves the picture of the witness being engaged in the rightful business of making change until within from seventy-five to one hundred feet of the place of impact or the west line of West Avenue. He then looked up and saw plaintiff driving south on West Avenue. When he had proceeded between forty-five and seventy feet he first realized the danger of a collision. He had been ringing his bell and continued doing so. He applied his brakes and did all he could to stop his car but failed because of lack of time and space. His efforts did reduce the speed of the car from twenty to ten miles an hour.

The testimony of Thyra Aarestrup presents an entirely different picture. She and two men passengers boarded the car at the west end of the line. She paid her fare on entering the car, but the men did not. The street car moved off and gained speed without any slackening to the point of impact and no gong or bell was rung or alarm given. One of the male passengers who had not paid his fare approached

the motorman when the street car was close to the crossing, handed him a bill and received his change; that "the young man paid his fare,. got up and paid his fare, and while he was paying the fare—before I could cry out a warning the car was in front of the street car and this accident happened. It was all in a flash." In addition to this testimony there is evidence that the day was clear and the view for at least a quarter of a mile west of the crossing was unobstructed. The windows of the car were shaded and the motorman was at the controls in the front end of the car.

The jurors are the judges of the weight and sufficiency of the evidence and the credibility of the witnesses. They are at liberty to believe or disbelieve all or any part of the testimony of any witness and if their conclusions, as expressed in their verdict, are supported by parts of the testimony of several witnesses I take it that it should not be disturbed on appeal unless the conclusions are inherently improbable.

Applying these rules to the instant case we have the following theory of the accident upon which the jury might have based its verdict: That when the street car was two hundred feet from the point of collision plaintiff was within twenty feet of the north rail of the tracks upon which the street car was traveling; that the two continued on their respective courses toward the point of impact, the street car at twenty and the automobile at about five or less miles per hour; that when the street car had traveled one hundred feet the automobile was proceeding towards the tracks and was so close to the tracks that it was in a position of danger, which fact was seen by Zoerb; that Zoerb then realized or should have realized that plaintiff was in a position of danger of which he was oblivious; that Zoerb did not ring any bell or give any alarm and did not apply his brakes and did nothing to check the speed of the street car but proceeded on his way, allowing his attention to be distracted from the danger in front of him by making change for a passenger when he was so close to the point of collision that the accident thereafter happened "in a flash". It is evident from photographs in the record that the street car struck the rear of the automobile so that it must have been true that about half of it had cleared the tracks before the impact. This evidence, if accepted as true, justifies the conclusion that if, when Zoerb first realized or should have

realized that plaintiff was in a position of danger of which he was oblivious, he had applied the brakes of the street car it would have been either stopped or its speed so reduced that the automobile would have cleared the tracks and there would have been no collision. Without intending to imply that the jury should have adopted these facts as true, they present circumstances which to me make a case in which that body was authorized to return a verdict against defendant under the doctrine of the last clear chance as now applied.

Further, Zoerb testified that he rang the bell of the street car continuously up to the moment of the impact. In *Locke* v. *Puget Sound International Ry. & Power Co.*, 100 Wash. 432 [171 Pac. 242, L. R. A. 1918D, 1119], the court said that "the continued movement of a person toward a place of danger after a warning sound is notice that he is unaware of his peril, and is enough to break the reciprocal balance of duty, and, if it can be said that he had time to do so, puts upon the motorman the positive duty of avoiding an accident". While the quoted statement seems to me to be too broad and severe to establish a general rule of law to be broadly adopted, still I believe that the fact that a plaintiff, traveling a course that would bring him into collision with an approaching street car, continued that course in the face of repeated warnings is a circumstance that might be taken into consideration in determining the time and place when the motorman should have realized the imminent danger of plaintiff and his obliviousness to such danger and, as a reasonable man, should have endeavored to reduce the speed of the street car and thus have endeavored to have avoided the accident. Of course, whether or not Zoerb gave any alarm is in dispute and I cannot tell what testimony on this question the jury accepted as true.

The doctrine that a plaintiff may be oblivious to his danger and escape the penalty of his negligence through the doctrine of the last clear chance is not new in California. It has been applied either directly or by necessary implication with varying degrees of strictness and success for many years. The following cases are cited merely by way of illustration: *Meeks* v. *Southern Pac. R. Co.*, 56 Cal. 513 [38 Am. Rep. 67]; *Lee* v. *Market St. Ry. Co.*, 135 Cal. 293 [67 Pac. 765]; *Harrington* v. *Los Angeles Ry. Co.*, 140 Cal.

514 [74 Pac. 15, 98 Am. St. Rep. 85, 63 L. R. A. 238];
*Green* v. *Los Angeles etc. Co.,* 143 Cal. 31 [76 Pac. 719, 101
Am. St. Rep. 68]; *Starck* v. *Pacific Electric Ry. Co.,* 172
Cal. 277 [156 Pac. 51, L. R. A. 1916E, 58]; *Darling* v.
*Pacific Electric Ry. Co.,* 197 Cal. 702 [242 Pac. 703]; *Ber-
guin* v. *Pacific Elec. Ry. Co.,* 203 Cal. 116 [263 Pac. 220];
*Girdner* v. *Union Oil Co., supra; Center* v. *Yellow Cab Co.,
supra; Smith* v. *Los Angeles Ry. Co.,* 105 Cal. App. 657
[288 Pac. 690], broadly approved in *Handley* v. *Lombardi,*
122 Cal. App. 22 [9 Pac. (2d) 867]; *Rasmussen* v. *Fresno
Traction Co.,* 138 Cal. App. 540 [32 Pac. (2d) 1091]. Pe-
titions for hearing were denied by the Supreme Court in
each of the three cited appellate court cases.

Three of the foregoing cases deserve careful considera-
tion because of their similarity to the instant case. They
are *Starck* v. *Pacific Electric Ry. Co., supra, Smith* v. *Los
Angeles Ry. Co., supra,* and *Handley* v. *Lombardi, supra.*
In one of the cases the plaintiff saw an approaching street
car and in another an approaching automobile at about the
same distances away that Rasmussen observed the defend-
ant's street car, and both like Rasmussen proceeded into
positions of danger and were injured. The judgments were
affirmed under the oblivious to danger rule of the doctrine
of the last clear chance.

In the Starck case it was said:

"Undoubtedly the plaintiff was astoundingly careless when
she turned her back on the approaching car and walked in a
leisurely manner parallel to the track. And undoubtedly
one about to cross in front of a suburban or interurban car
must use his or her faculties and may not depend upon the
compliance by the operator of the car with the local by-law
relating to speed. (*Brown* v. *Pacific Electric R. Co.,* 167
Cal. 199, 204 [138 Pac. 1005]; *Hutson* v. *Southern Cali-
fornia R. Co.,* 150 Cal. 701, 703 [89 Pac. 1093]; *Griffin* v.
*San Pedro etc. R. Co.,* 170 Cal. 772 [L. R. A. 1916A, 842,
151 Pac. 282].) And undoubtedly there are cases in which
a plaintiff so far violates the standard of conduct applicable
to all persons that an appellate court may say as a matter
of law that upon the undoubted facts, the judgment should
be in favor of the defendant. (*Chrissinger* v. *Southern
Pacific Co.,* 169 Cal. 619, 624 [149 Pac. 175]; *Hamlin* v.
*Pacific Electric Co.,* 150 Cal. 776, 779 [89 Pac. 1109].) But

here we are confronted with a conflict of testimony. The motorman said that he saw plaintiff as she walked from the sidewalk, and that he was then more than three hundred feet from the place where the accident occurred, but that she did not go into the zone of danger until it was too late to stop the car in time to prevent the accident. But she testified that she first saw the car when it was something like three hundred feet away, and that she had already crossed the first track, and was confronted by the car standing on the second track. The jury may have believed that the part of his testimony regarding the distance from which he first noticed her was true, but that her statement with reference to the position which she occupied when the car was three hundred feet from her was correct. This would place her between the westbound car and the southerly track with a clear space of only twenty inches between the two cars if they should pass, and would give play for the doctrine of 'last clear chance'. We do not wish, of course, to imply any views on the part of this court upon the relative verity of the statements of these two witnesses. We merely illustrate our idea that because of the conflict of evidence there was a case to go to the jury.''

In the Smith case the court said:

''Another situation which appellant contends should bar plaintiff from the benefit of the rule is where the negligence of the injured party was contemporaneous, concurrent, continuing and contributory with the negligence of the party inflicting the injury. (*Young* v. *Southern Pac. Co.*, 189 Cal. 746, 754 [210 Pac. 259].) The law is well settled in this state that the rule cannot be applied to a situation where the negligence of the deceased continued to the moment of the impact and actively contributed to his own injury. The injured party being actively and contemporaneously at fault until the moment of the collision, he is barred from the right to recover for any act up to that time. (*Green* v. *Los Angeles T. Ry. Co.*, 143 Cal. 31, 41 [76 Pac. 719, 101 Am. St. Rep. 68].) The liability is placed upon the party inflicting the injury only if, immediately before the actual infliction of the injury, the injured party was in such a situation as to be unable, by the exer-

cise on his part of reasonable and ordinary care to extricate himself, and vigilance on his part would not have averted the injury (*Young* v. *Southern Pac. Co., supra.*). In other words, the 'last clear chance' must be solely upon the part of the person inflicting the injury. If both parties have that chance it cannot be said that there is any 'last clear chance' at all. However, if plaintiff was oblivious to or unconscious of his position of danger, the question of his duty to extricate himself does not arise, and the doctrine is applicable.''

I cannot distinguish the facts of the case of *Handley* v. *Lombardi, supra,* from those of the instant case, and consider that case controlling.

I must confess to my inability to rationalize the oblivious to danger rule when applied to the facts of two of the three cases last cited. I cannot understand how a plaintiff who sees a dangerous instrumentality approaching and walks or drives in front of it can be considered oblivious to the danger. I would say that when once apprised of danger approaching under such circumstances the knowledge then obtained would in fact continue in the mind of a plaintiff for the few seconds intervening between seeing the danger and the injury. However, I believe it necessary for me to follow what I consider the established interpretation of the law in this state. This was my controlling thought when the first opinion in *Rasmussen* v. *Fresno Traction Co., supra,* was written and filed. Then, as now, I consider myself bound by prior decisions.

My associates seek to distinguish between the Starck, Smith and Handley cases and the instant case because in those cases, street cars operating on city streets and an automobile driving on a city street were involved while in the instant case the street car was traveling on a private right of way. I am not greatly impressed by this attempted distinction. The reciprocal rights, duties and obligations of the operator of an interurban car and an automobile driver are sufficiently set forth in the opinion of my associates and in the opinion on the first appeal. Can it be that there are no substantially, though admittedly not exactly, similar

rights, duties and obligations existing between the street car operator on the city street and the automobile driver? In neither case can the street car leave its rails nor turn out from its course. The interurban street car operator may assume that the motorist will stop if necessary. The law enjoins the city motor car driver to so operate his vehicle that he will not endanger the life, limb or property of another. The operator of the street car on the city street has the right to presume that motorists will obey the law. I can see no important difference between the two sets of circumstances sufficient to apply the oblivious to danger rule in the case of a street car traveling on a city street and reject it in the case of one traveling on a private right of way. If unconsciousness is an excuse in the one case it should be in the other.

There are a multitude of cases in the United States where the oblivious to danger rule, under one name or another, has been applied in cases involving trains or electric cars traveling on private rights of way. For the purpose of illustration I cite the following: *Alabama Great Southern Ry. Co.* v. *McWhorter,* 156 Ala. 269 [47 So. 84]; *Nichols* v. *Chicago, B. & Q. R. Co.,* 44 Colo. 501 [98 Pac. 808]; *Southern Ry. Co.* v. *Wahl,* 196 Ind. 581 [149 N. E. 72]; *Tempfer* v. *Joplin & P. Ry. Co.,* 89 Kan. 374 [131 Pac. 592]; *Black* v. *New York etc. Co.,* 193 Mass. 448 [79 N. E. 797, 9 Ann. Cas. 485, 7 L. R. A. (N. S.) 148]; *Cavanaugh* v. *Boston & M. R. R.,* 76 N. H. 68 [79 Atl. 694]; *St. Louis S. W. R. Co.* v. *Cambron,* 62 Tex. Civ. App. 465 [131 S. W. 1130]; *Chesapeake & O. Ry. Co.* v. *Corbin's Admr.,* 110 Va. 700 [67 S. E. 179]. In *Ilardi* v. *Central Cal. Traction Co.,* 36 Cal. App. 488 [172 Pac. 763], where the street car was on a private right of way, the oblivious to danger rule was announced and discussed by way of *dicta*. Of course it was discussed and applied in the first appeal in the instant case where the street car was traveling on a private right of way (138 Cal. App. 540 [32 Pac. (2d) 1091]).

It is my conclusion that if the oblivious to danger rule is to be applied where the plaintiff sees the approaching danger and goes on his way it must be applied to trains and cars

traveling on private rights of way as well as to those traveling on city streets.

It is the duty of an appellate court to accept as true the evidence supporting the judgment, to resolve all opposing inferences in favor of the judgment and to draw all reasonably possible inferences in favor of affirmance of the judgment. (*Mah See* v. *North American Acc. Ins. Co.*, 190 Cal. 421 [213 Pac. 42, 26 A. L. R. 123]; *Witherow* v. *United American Ins. Co.*, 101 Cal. App. 334 [281 Pac. 668].) As there is a theory presented by the evidence under which the doctrine of the last clear chance becomes operative and under which the judgment may be sustained, I conceive it my duty to follow these rules of law and affirm the judgment.

It is thoroughly established in the cases cited in this opinion and that of my associates that if the doctrine of the last clear chance applies to the facts of this case the question of plaintiff's right to recover is one for the jury and is not a matter of law for this court. It being my conclusion that the doctrine may be invoked here, it follows that I believe the judgment should be affirmed if there is no material and prejudicial error in the record, which I have failed to find.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on September 4, 1936.