[Civ. No. 7832. Second Appellate District, Division Two.—October 16, 1933.]

GRVAN W. WEBB, Appellant, v. LOS ANGELES RAILWAY CORPORATION (a Corporation) et al., Respondents.

FAITH WEBB, a Minor, etc., Appellant, v. LOS ANGELES RAILWAY CORPORATION (a Corporation) et al., Respondents.

Jones, Stephenson, Palmer & Moore and C. Arden Gingery for Appellants.

Gibson, Dunn & Crutcher and Penn Cummings for Respondents.

CRAIG, Acting P. J.—Separate actions commenced by one of the plaintiffs in his own behalf, and as guardian *ad litem* on behalf of a minor child were consolidated for trial, and were submitted to a jury upon the evidence adduced by the plaintiffs, without the offer of evidence by the defendants. Verdicts in favor of the former were returned, a motion for a new trial was interposed by said defendants, which was granted, and the plaintiffs appealed from such ruling.

At an intersection of thoroughfares in the city of Los Angeles, known and designated as Vermont Avenue and Eighty-fourth Place, respectively running northerly and southerly and easterly and westerly, the appellants, while driving easterly in an automobile, were injured by the collision of a south-bound street-car of the respondent corporation therewith. The car was first seen about 300 feet away, approaching at a speed of 30 to 35 miles per hour, as the automobile made a boulevard stop, proceeded to cross

Vermont Avenue, and was stalled on the car-tracks. Attempts to start the same proving fruitless, the occupants waved their arms and shouted, but the street-car continued on, struck the machine, and carried it some distance to and against a large pole. At the close of the plaintiffs' evidence, counsel for the defendants announced that "the defendant submits the case on the plaintiffs' own testimony". Following the verdicts and the motion for a new trial, the court in granting the same stated, in part: "The only question for consideration on this motion is whether or not the evidence would support a finding against the defendants under the doctrine of last clear chance. If the evidence would not support such a finding then the court erred in instructing the jury upon that question. It would be only upon an application of the doctrine of the last clear chance that the plaintiff would be entitled to recover, if at all." It becomes necessary to examine here the evidence upon which the jury awarded damages and from which appellants contend that the trial court erroneously arrived at the foregoing conclusions. The plaintiffs testified that the avenue "to the north from which direction the street car came was level and straight 2,000 feet or more from the intersection"; that they were familiar with the crossing; that they drove thereto at about 7:30 in the morning, looked and saw nothing in the way, then proceeded to cross; but for some unknown reason the machine "came to an absolute stall and still position on the west track. The automobile did not move after it stalled until the collision." When the street-car was first seen it was about 300 feet away, and when the automobile stopped the car was approximately 100 feet or more away, north of the intersection. The motorman began ringing his bell at a point nearly 200 feet from the point of impact. The appellant swore that his motor was still, that he was unable to get it started, but that he "shifted into low gear to get it off" the track, and that it "rolled back just a little". One witness testified that he "heard the gong on the car from the time the car was 150 feet to 200 feet away continuously until it hit the auto"; that "when the auto came to a final stop the electric car was 75 feet away"; that the "speed of the car did not lessen at all from the time I first saw it 150 to 200 feet north to the point of the collision. The collision was very heavy." Another testified that when

he first saw the automobile he "saw the electric car coming south about 100 feet north and the auto was then on the track. . . . It kept the same speed up to the time of the collision." A third testified that the ringing of the gong attracted his attention when the car was 150 to 200 feet away, approaching at a speed of 30 to 35 miles per hour; that the "electric car did not change its speed during that time, until just as he hit, when I heard him put on his air". Another swore that he observed the car as it approached the point of collision; that "there was no apparent change in the speed of the car". A witness who had stood on the sidewalk was attracted "by the furious ringing of the bell" about 112 feet away, he did "not notice the motorman put on his brakes; the street-car diminished its speed slightly". And another testified that the car "was coming rapidly and maintained the same speed until the collision". A fair brief *résumé* of the evidence discloses slight, if any, variation of the views of numerous eye-witnesses. It appeared that the distances were related by them from measurements; all agreed upon the speed of the car, ringing of the bell, a clear view down the tracks, failure to stop or to appreciably slacken its speed, and the unavoidable peril of the plaintiffs in an emergency.

Careful consideration of the decisions would seem to compel an application of the rule stated in *Darling* v. *Pacific Electric Ry. Co.*, 197 Cal. 702 [242 Pac. 703]: "The elements of the doctrine of last clear chance, which must be present in any given case in order to warrant the invocation of that doctrine, are these: (1) That the plaintiff has been negligent; (2) that as a result thereof she was present in a situation of danger from which she could not escape by the exercise of ordinary care; (3) that the defendant was aware of her dangerous situation and realized, or ought to have realized her inability to escape therefrom; (4) that the defendant then had a clear chance to avoid injuring her by the exercise of ordinary care; (5) that the defendant failed to avoid the accident by the use of ordinary care. It is not required of the plaintiff to show that her inability to escape from the threatened danger was a physical impossibility. The doctrine applies if she be wholly unaware of her danger and for that reason unable to escape it. Whenever she becomes aware of the danger, however, she must there-

after exercise ordinary care for her protection. . . . There are, then, upon this phase of the case, two questions, viz.: (1) Whether or not there was any evidence showing or tending to show that the plaintiff was in such a situation, after she became aware of the threatened danger, from which she could not by the exercise of ordinary care have extricated herself; (2) Whether or not there was any evidence showing or tending to show that the motorman had actual knowledge of her situation and could by the exercise of ordinary care have avoided the accident but negligently failed to do so. It is not disputed that both of these queries were, admittedly, in view of the situation revealed by the evidence adduced on the entire case, questions of fact for the determination of the jury . . . '' When the plaintiff herein realized that his automobile was on the track in the danger zone, he ''screamed and threw up his left hand''. When he did so the car was at least 100 feet away, and the motorman was looking directly down the track toward the plaintiffs, but ''did not seem to slacken speed''. ''There is substantial, uncontradicted evidence, however, that the motorman had a clear view of the track for a considerable distance ahead. Between the car and the plaintiff there was nothing on the track to distract him. His vigorous ringing of the car bell, in connection with those circumstances, is a clear indication that he was attempting to warn the plaintiff of the approach of the car. Any other inference would be clearly unwarranted by the evidence.'' (*Darling* v. *Pacific Electric Ry. Co., supra*.) It has been said by our Supreme Court that in such a case an ordinarily prudent man would ''upon seeing an automobile moving upon the track in the erratic manner described, have realized the danger of a collision and reduced his speed until he could ascertain whether the automobile would be able to get clear. . . . Certainly it cannot be said that every reasonable man would be bound to conclude, on the facts shown, that the collision was not caused by excessive speed of the car, or by the failure of the motorman to slow down as soon as he should have. If this be so, the plaintiff was entitled to have the question of negligence submitted to the jury.'' (*Burr* v. *United Railroads,* 163 Cal. 663 [126 Pac. 873].)

The respondents are not aided by authorities cited upon facts clearly tending to show that upon the undisputed evi-

dence the unavoidable inference must be that the plaintiff approaching a railroad track did not look or listen, or that when fully aware of the approach of a car he closed his eyes to the danger and blindly drove into its path. Stress is placed upon the fact that when the appellants approached the respondent company's tracks the car was 300 feet distant, and that the former were "driving slowly", when it was but 100 feet away; that the witnesses were nearly unanimous in their testimony that "the electric car was approximately 300 feet away when the plaintiff Webb drove upon the southbound track". Assuming, as apparently did the trial court, that the appellant Webb could have known of the approach of the car 300 feet away, it appears that he looked and saw no car, drove onto the track when his machine was responding, suddenly stopped in "an absolute stall" for no known reason or as "a car acts when it is out of gas", with but six seconds, according to the respondent's computations, in which to ascertain the difficulty and proceed. █ If error was committed in giving instructions upon the last clear chance theory, such instructions were so given at the instance of the defendants, and had the verdicts been permitted to stand would have furnished no ground for reversal of the judgments. (*Bognuda* v. *Pearson*, 71 Cal. App. 105 [234 Pac. 857]; *Finkelstein* v. *Cosgrove*, 83 Cal. App. 201 [256 Pac. 608]; *Murray* v. *Kunde*, 91 Cal. App. 440 [267 Pac. 158].) █ And error in giving instructions, if shown to exist, does not result in making the verdicts "against law", requiring a new trial. (*O'Malley* v. *Carrick*, 60 Cal. App. 48 [212 Pac. 45].) The sufficiency of the evidence to sustain the verdicts was ample, since the jury may well have concluded that the respondents' car could have been brought to a stop after the motorman must be presumed to have seen the impending peril of the appellants; and that the latter were within the time allowed them unable to extricate themselves from such danger. Where there has been no error in determining an issue of fact or affecting the determination of any question of fact there is no ground for a new trial. Such grounds all refer to the foregoing errors only. It is established that the motion for a new trial refers to a situation furnishing a reason for reexamination of an issue of fact. (*Estate of Keating*, 162 Cal. 406 [122 Pac. 1079].) It cannot be said that upon the

same evidence a different conclusion might be reached, nor that evidence explanatory thereof was excluded to the prejudice of the respondents. (*Bone* v. *Hayes,* 154 Cal. 759 [99 Pac. 172].) Since the grounds upon which a new trial was granted are rendered by the foregoing unsubstantial, it must be held error in granting the same.

The order granting the motion for a new trial is reversed.

Stephens, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on November 15, 1933.