[Civ. No. 12962. First Dist., Div. Two. Feb. 21, 1946.]

CYRIL A. KASHEVAROFF, Respondent, v. HERBERT R. WEBB et al., Appellants.

Bronson, Bronson & McKinnon for Appellants.

H. O. Mundhenk and Jesse E. Nichols for Respondent.

DOOLING, J.—Defendants appeal from a judgment for plaintiff entered on a jury verdict. Respondent was struck and injured by an automobile operated by appellant Webb. The

*Diagram of plaintiff's exhibit No. 1, considerably reduced in size.*

scene of the accident is difficult to describe in words and may best be visualized by a diagram thereof which is in evidence as plaintiff's exhibit No. 1, and is here reproduced, considerably reduced in size: (*See page 179.*)

While there was a sharp conflict in the testimony we will follow the accepted procedure on appeal and state the substance of the evidence most favorable to the respondent. Shortly before midnight respondent was crossing from the southerly side of Bernal Avenue to the curved segment of sidewalk that lies between Bernal Avenue and Diamond Street. The course that he was taking lay between the two parallel lines which are shown on the diagram extending between the two sidewalks. (These parallel lines are not a part of the original diagram and do not represent marks on the street, but were placed on the diagram during the course of the trial.) Before leaving the curb respondent looked to his left toward San Jose Avenue and observed nothing approaching from that direction. He proceeded across Bernal Avenue to a point near its center line without again looking to his left. A motor car approached him traveling westerly on Bernal Avenue and he was dazzled by its, or some other, lights and just about that time appellants' automobile, which had come easterly along San Jose Avenue and was proceeding into Bernal Avenue, struck him.

The questions argued on appeal depend upon whether or not the respondent was walking in an unmarked crosswalk at the time he was struck. The only marked crosswalks in the area are those shown on the diagram as solid parallel lines running northerly from the southerly sidewalk shown on the diagram to the curved sidewalk between Monterey Boulevard and Joost Avenue and thence at a right angle across the mouth of Joost Avenue.

It was stipulated that Diamond Street intersects Bernal Avenue at an angle of 49 degrees, and appellants argue that since this is so there can be no unmarked crosswalk between the southerly side of Bernal Avenue and the curved sidewalk lying between it and Diamond Street, under the definition of section 85(a) of the Vehicle Code which reads:

" 'Crosswalk' is either:

" (a) That portion of a roadway ordinarily included within the prolongation or connection of the boundary lines of sidewalks at intersections where the intersecting roadways meet at approximately right angles. . . ."

Respondent argues on the contrary that the open area into which Bernal Avenue and the other four streets enter is itself a highway within the definition of section 81 of the Vehicle Code and since this open area is intersected by Bernal Avenue at approximately right angles the crossing in question is an unmarked crosswalk under section 85(a).

The trial court took a middle ground and instructed the jury as follows:

''And now I am going to try to be brief, but I want to bring clearly to your attention one point (referring to diagram). First of all, in this case, there is a square of roadway, which is an open roadway space. The French call it a 'Place,' meaning an open space to which streets lead, or at which they commence. There is a square space at which San Jose Avenue either commences or ends; at which Monterey Boulevard either commences or ends, at which Joost Avenue either commences or ends, and at which Diamond Street either commences or ends, and at which Bernal Avenue either commences or ends. In other words, neither street carries right on through. It is called a 'Place' in that it is an open zone in a city at which streets lead to or from.

''Now as to whether this is a marked or unmarked crosswalk, this is the one to which your attention has been directed, on the east side, or at the end of Bernal into this Place. Now, remembering that in a marked or unmarked crosswalk under the Vehicle Code, the pedestrian has the privilege of immediate use of the highway, and remembering if it is not a marked or unmarked crosswalk, the vehicle has the privilege of the immediate use of the highway, so in your determination of the conflict of the evidence, that is, as to whether the crosswalk was here (indicating) or there (indicating) and having in mind there was a sidewalk on the south side of Bernal as it comes to its terminus or end at this place, and having in mind that there was a sidewalk down Diamond, as the pictures of the diagram show, on the north side, I will leave the question for you to determine whether this is a marked or unmarked crosswalk.''

This instruction is attacked by appellants who claim that the jury should have been instructed as a matter of law that there was no crosswalk at this intersection.

It is apparent from an examination of the diagram that what the trial judge described as a ''place'' in the criticized

instruction is an open area into which five streets debouch. This open area is almost a perfect rectangle which is intersected by Bernal Avenue and Monterey Boulevard at approximately right angles, and by the other three streets at more acute angles.

That this open area is something more than an intersection formed by the five streets opening into it is not only apparent from an inspection of the diagram itself, but may be readily demonstrated by extending the boundary lines of the five streets across it. A considerable portion of the open area is not included within any of the boundaries of the five streets so extended and a still larger area is not included within the intersection of any two or more of them.

■ This open area is itself a highway within the definition of section 81 of the Vehicle Code, viz.: " 'Street' or 'highway' is a way or place of whatever nature, publicly maintained and open to the use of the public for purposes of vehicular travel." It is also a roadway within the definition of section 83, Vehicle Code: " 'Roadway' is that portion of a highway improved, designed or ordinarily used for vehicular traffic."

On the easterly side of this open area is the small segment of curved sidewalk to which the respondent testified that he was crossing at the time of his injury. A tangent may be drawn from a point on the curb of this curved sidewalk which is perpendicular to the southerly line of Bernal Avenue and such tangent delimits the easterly line of the open area where it is intersected by Bernal Avenue. This tangent approximately coincides with the more westerly of the two lines which were actually drawn upon the diagram from the curved segment of sidewalk to the southerly line of Bernal Avenue.

■ Treating the open area as a separate roadway, as we must under the physical facts having in mind the definitions of sections 81 and 83, Vehicle Code, the route by which respondent testified that he was crossing falls within the definition of an unmarked crosswalk as defined in section 85(a) of the Vehicle Code, viz.: "That portion of a roadway ordinarily included within the prolongation or connection of the boundary lines of sidewalks at intersections where the intersecting roadways meet at approximately right angles."

This is true because the open area and Bernal Avenue, both of which are roadways, intersect at that point and "meet at approximately right angles." That Diamond Street intersects

both the open area and Bernal Avenue at angles which are not approximately right angles is immaterial, since the intersection of the open area and Bernal Avenue is at right angles and it was across that intersection that respondent was traveling at the time that his injuries were received. The case is thus distinguishable from *Weissman* v. *Seehusen,* 55 Cal.App. 2d 391 [131 P.2d 10] and *Vitali* v. *Straight,* 21 Cal.App.2d 253 [68 P.2d 746] where the only intersections involved were at acute angles.

This conclusion is not only justified by the application of the relevant sections of the Vehicle Code to the physical facts, but it is strengthened, if need be, by the fact, which is obvious from an inspection of the diagram, that this route would appear to the average pedestrian to be the proper one to use in making the crossing which respondent was engaged in. ▪ Laws are made for the practical governance of men and it is axiomatic that that construction of a statute which appears to be reasonable is to be preferred. (23 Cal.Jur. 722; Civ. Code, § 3542.)

▪ It follows that the trial court should have instructed the jury as a matter of law that there was an unmarked crosswalk at this intersection. In leaving this question to the jury the instruction was more favorable to appellants than the law justified and appellants suffered no prejudice therefrom.

▪ There was a dispute between the parties, as evidenced by conflicting affidavits submitted on motion for new trial, as to the points indicated on the diagram by the judge in giving this instruction. We must assume in support of the court's order denying a new trial the truth of the affidavit in support of the judgment that the trial judge pointed only to portions of the area which we have decided was an unmarked crosswalk. ▪ That the trial judge used the words "marked or unmarked crosswalk" did not constitute prejudicial error although it was an admitted fact that there was no marked crosswalk at the place in question, since there was an unmarked crosswalk there as a matter of law.

The other points argued by appellants depend upon their claim that there was no unmarked crosswalk at the point in question. ▪ Since we have decided that there was an unmarked crosswalk at that point respondent had the right of way and appellants' automobile was bound to yield to him. (Veh. Code, § 560(a).) ▪ The question of respondent's

contributory negligence was, under the circumstances, a question of fact for the jury.

The judgment is affirmed.

Nourse, P. J., and Goodell, J., concurred.

A petition for a rehearing was denied March 23, 1946, and appellants' petition for a hearing by the Supreme Court was denied April 18, 1946.