[Civ. No. 13975. First Dist., Div. One. June 24, 1949.]

WILLIAM HAERDTER, Appellant, v. MAXWELL
JOHNSON et al., Respondents.

548

Alfred F. Breslauer, George Liebermann and Appel, Dains & Liebermann for Appellant.

Dana, Bledsoe & Smith, Paul Dana and A. Dal Thomson for Respondents.

WARD, J.—Plaintiff appeals from the judgment entered on a verdict in favor of defendants in a personal injury action arising out of an accident involving an automobile owned by defendant Bartholomew which was being driven by his employee, defendant Johnson.

The points urged by plaintiff are as follows: The court erred in refusing to instruct on last clear chance; the court erred in instructing that the plaintiff was not in an unmarked crosswalk and hence was required to yield the right of way to defendant Johnson rather than giving plaintiff's instructions to the contrary, and the court erred in rejecting evidence pertinent to the existence of an unmarked crosswalk.

The last clear chance instructions requested by plaintiff stated that the plaintiff's negligence would not bar his recovery if the jury found, among other facts, "That the defendant Johnson had *actual* knowledge of plaintiff's perilous situation" and "That after the defendant Johnson acquired *actual* knowledge of plaintiff's perilous situation, he had a clear opportunity to avoid the accident and could have done so by exercising ordinary care." (Emphasis added. See, California Jury Instructions Civil, 1943, pp. 310-312; *Girdner*

v. *Union Oil Co.,* 216 Cal. 197 [13 P.2d 915].) Whether the court erred in refusing to give such instructions depends upon whether they are applicable to the evidence produced in the trial court. (*Jones* v. *Heinrich,* 49 Cal.App.2d 702 [122 P.2d 304]; *Vitali* v. *Straight,* 21 Cal.App.2d 253 [68 P.2d 746]; *Rather* v. *City & County of San Francisco,* 81 Cal.App.2d 625 [184 P.2d 727]; *Dickey* v. *Thornburgh,* 82 Cal.App.2d 723 [187 P.2d 132].)

 Evidence of the location of the accident in question included a photograph and two diagrams which reflected conditions as of the date of the accident. The accident occurred while plaintiff was walking across Army Street, which runs east and west, near the intersection of a thoroughfare running in a northerly direction to the north of Army Street and in a southeasterly direction south of Army Street, thereby making a bend. North of Army Street this thoroughfare is Potrero Avenue and to the south it is Bayshore Boulevard.

Plaintiff testified that at about 11 p.m. of a fogless and rainless night he descended from a street car on the westerly side of Potrero Avenue at Army Street. After waiting a few minutes for a bus he determined to cross Army Street to catch a bus or street car which he thought would stop slightly west of the traffic signal on the southerly side of Army Street. No lines or other markings existed at this time to indicate the pedestrian crossing between the northerly and southerly sides of Army Street at the intersection in question. Instead of crossing over that portion of Army Street "ordinarily included within the prolongation or connection of the boundary lines" of the westerly sidewalks of Potrero Avenue and Bayshore Boulevard (Veh. Code, § 85), plaintiff crossed from a point slightly west of the westerly sidewalk of Potrero Avenue towards a point slightly west of the traffic signal on the southerly side of Army Street and considerably west of the prolongation of the westerly sidewalk of Bayshore Boulevard at Army Street. The jury could reasonably infer from plaintiff's testimony that when he started across the traffic light was against him. When he left the northerly sidewalk of Army Street he looked to the right and saw automobile lights 400 to 450 feet away. He walked "as fast as he could walk" always continuing in the same direction at the same speed. After crossing the street car tracks he again looked to the right and saw the lights of defendants' car 150 feet away. He was about 5 feet from the southerly sidewalk when he was knocked over and rendered unconscious.

Defendant Johnson testified that at the time in question he was driving at 20 to 25 miles an hour in high gear in an easterly direction on Army Street with the intention of making a right hand turn on Bayshore Boulevard. The 1936 Packard 120 which he was driving was in good mechanical condition and his headlights, which were on high beam, had been recently inspected. When he first saw plaintiff he was about 5 feet from the front right fender or headlight. Johnson's explanation for not having seen plaintiff sooner was that the lights of the automobiles coming up Bayshore Boulevard obstructed his vision and caused "a glare from your windshield glass." He did not have this problem when he was 300 or 400 feet west of the corner and veered slightly to avoid a woman pedestrian, because the "lights don't affect you back there." He was driving 6 or 7 feet from the southerly curb at the time of the impact. The point of impact was west of the traffic signal referred to above. The car went 20 feet from the time it struck plaintiff until it came to a stop, plaintiff being carried this distance on the right front fender. When it came to a stop, plaintiff rolled onto the pavement near the traffic signal. After the accident Johnson observed skid marks about 15 feet in length made by the car which were approximately 15 feet to the west of the traffic signal.

The member of the Accident Investigation Bureau who arrived at the scene of the accident after plaintiff had been conveyed to the hospital testified that the right front fender of defendants' car was damaged and that the street lights were lit on each of the four corners of the intersection. At the hospital he saw plaintiff who was wearing a brown suit, black shoes, and a brown hat at the time of the accident. His report contains the following statements: The accident occurred "50 feet west of intersection." "Pedestrian stated that he did not know status of the signals when he started to cross street." The report was checked at the printed statement, "Crossing not at intersection," and the word, "no," followed the question, "Was pedestrian inside the markings or extension of sidewalk lines."

Plaintiff contends that the triers of fact were entitled to find that defendant Johnson saw the plaintiff sooner than he admitted and at a time when, by the exercise of ordinary care, he could have avoided the accident, and that therefore the jury should have been instructed as to the doctrine of last clear chance. There is abundant authority that "notwithstanding there may be a total absence of any positive testimony that

the defendant actually knew of plaintiff's danger, and even though the defendant definitely denies seeing the plaintiff at all, the doctrine of the last clear chance may be invoked and applied where the *facts and circumstances* are such as *would justify the jury in finding that* despite the defendant's denial of knowledge or the absence of direct testimony on the subject, *he was actually aware of plaintiff's danger* in time to avert the accident; in other words, that he 'must have known' of plaintiff's danger.'' (Emphasis added. *Gillette* v. *City of San Francisco,* 58 Cal.App.2d 434, 442 [136 P.2d 611] [second Gillette appeal; see prior appeal, 41 Cal.App.2d 758 (107 P.2d 627)]; Accord, *Pire* v. *Gladding McBean & Co.,* 55 Cal.App.2d 108 [130 P.2d 143]; *Bailey* v. *Wilson,* 16 Cal. App.2d 645 [61 P.2d 68]; *Handley* v. *Lombardi,* 122 Cal.App. 22 [9 P.2d 867]; *Smith* v. *Los Angeles Ry,* 105 Cal.App. 657 [288 P. 690]; *Darling* v. *Pacific Electric Ry. Co.,* 197 Cal. 702 [242 P. 703]; and *Wahlgren* v. *Market Street Ry. Co.,* 132 Cal. 656 [62 P. 308, 64 P. 993].) This line of cases does ''not hold that a defendant is liable because he *ought* to have known of plaintiff's danger, or because the circumstances were such as to put him on notice of the danger, or because he was remiss in failing to discover the danger; but in effect hold that under all the facts and circumstances shown by the evidence it was proper to find that the defendant, despite his denial of knowledge, or despite the absence of direct testimony on the subject, was actually aware of the plaintiff's danger in time to avert it.'' (Mark A. Hall, Last Clear Chance, p. 61.)

What facts and circumstances must the evidence show to justify a finding that defendant Johnson was aware of plaintiff's danger in time to avert the accident? In *Bailey* v. *Wilson, supra,* skid marks extended back from the place of impact for a distance of 56 feet and the car stopped less than a foot from the point of impact. In the present case the evidence of skid marks indicates that defendant Johnson did not apply the brakes until just about the time of the impact. In *Gillette* v. *City of San Francisco, supra,* at page 438, the defendant motorman testified that he rang the car bell and made a ''check stop'' by slowing down and then going ahead, because he saw ''carmen standing out alongside of their cars like carmen always do.'' Similarly in *Darling* v. *Pacific Electric Ry Co., supra,* and in *Webb* v. *Los Angeles Ry. Co.,* 134 Cal.App. 637 [26 P.2d 26], the motorman rang the bell to warn plaintiff of the approach of the street car. In the present case there is no evidence that

defendant Johnson sounded his horn or otherwise indicated that he saw plaintiff until plaintiff was only 5 feet in front of the automobile. In *Argo* v. *Southern Pacific Co.*, 39 Cal. App.2d 706 [104 P.2d 77], the engine fireman testified that he was looking straight down the track which was unobstructed for approximately a mile before the crossing where the train collided with plaintiff's automobile, and did not see it approach the tracks. In *Handley* v. *Lombardi, supra,* the defendant, with a clear view for over 300 feet, drove his automobile from the right towards plaintiff's truck which he claimed he did not see until it was too late to avoid the accident. Similarly, in *Pire* v. *Gladding McBean & Co., supra,* and in *Hoy* v. *Tornich,* 199 Cal. 545 [250 P. 565], there was no obstruction to defendant's view from his automobile of objects on the highway. In the present case the lights of automobiles turning up Bayshore Boulevard obstructed defendant Johnson's vision.

It thus appears that in each of the above cited cases in which the last clear chance doctrine was held to be applicable, the facts developed in the trial court either indicated that the defendant saw the plaintiff prior to the time that he admitted or they failed to establish any reasonable explanation for the defendant's failure to see the plaintiff. In the present case, not only is there no indication from the application of brakes or the sounding of a horn or otherwise that defendant Johnson saw plaintiff prior to the time that he testified he did, but there is evidence of a physical obstruction to his vision. Defendant Johnson's testimony concerning the glare from the lights of automobiles turning up Bayshore Boulevard stands uncontradicted. While plaintiff urges on appeal that it is incredible that lights from stopped automobiles on a street intersecting at about a right angle got into his eyes, the exhibits introduced in the trial court show that Bayshore Boulevard curves from a southeasterly direction as it runs into Potrero Avenue at the intersection in question, and Johnson did not complain of lights getting into his eyes but rather of lights causing a glare on his windshield. On the present record, the fact that the jury may disbelieve Johnson's testimony does not mean that facts contrary to his testimony have been established which would justify the giving of an instruction on the last clear chance doctrine.

As the record is devoid of such evidence as would justify the jury in finding that defendant Johnson was aware of plaintiff's danger in time to avert the accident no error

was committed by the trial court in refusing to instruct as to the doctrine of last clear chance. A similar conclusion was reached in *Vitali* v. *Straight, supra,* where the defendant was driving at from 40 to 45 miles per hour on a clear night with lighted headlights, brakes and horn "in good working order," but where he testified that "he did not see Vitali until his automobile was within 40 to 45 feet from him, at which time Vitali was running diagonally across the main highway" and that he sounded his horn and applied the brakes so that at the time of impact he was traveling at from 20 to 25 miles per hour. This court noted in *Simon* v. *City & County of San Francisco,* 79 Cal.App.2d 590, 601 [180 P.2d 393], that if the only evidence in that case had been plaintiff's testimony that he was sober and the motorman's testimony that until just before the moment of impact, and too late to prevent it, plaintiff was in an apparent place of safety and was not in an apparent position of peril, these "facts would probably have precluded the doctrine from applying. (*Dalley* v. *Williams,* 73 Cal.App.2d 427 [166 P.2d 595].)"

A contrary holding in the present case would throw open almost every personal injury case involving street cars or motor vehicles to the application of the last clear chance doctrine and to verdicts by guess and conjecture rather than by evidence. This would be, in effect, an application of the comparative negligence doctrine, which doctrine may be just and fair, but which California's Legislature has not seen fit to adopt, and an ignoring of the fact that in this state the last clear chance doctrine only applies where the jury can find that the defendant is actually aware of the plaintiff's peril in time to avert the accident.

■ There is no merit to plaintiff's contention that the court erred in instructing the jury "that the plaintiff at the time and place of the happening of the accident was not in a marked or unmarked crosswalk and therefore that he was under the duty [expressed in Veh. Code, § 562] to yield the right of way to the automobile of defendant Maxwell Johnson," and in failing to instruct that if plaintiff was walking from the northwest corner of Potrero Avenue and Army Street toward the traffic signal on the south side of Army Street, it was defendant Johnson's duty to, yield the right of way to plaintiff. Even had the jury found that this was the path followed by plaintiff—although there is considerable evidence indicating that plaintiff was walking to the west of said path—

it would not follow that as a matter of law plaintiff had the right of way. Section 562 of the Vehicle Code provides that (a) "Every pedestrian crossing a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right of way to all vehicles upon the roadway." An unmarked crosswalk is "That portion of a roadway ordinarily included within the prolongation or connection of the boundary lines of sidewalks at intersections where the intersecting roadways meet at approximately right angles . . ." (Veh. Code, § 85.) It is not disputed that the intersecting roadways involved herein meet at approximately right angles. Accordingly, for plaintiff to have been within the unmarked crosswalk across Army Street and thus entitled to the right of way, plaintiff was required to proceed along the prolongation of the boundary lines of the westerly sidewalks of Potrero Avenue and Bayshore Boulevard. All the evidence indicates that he chose another path.

Nothing in *Kashevaroff* v. *Webb*, 73 Cal.App.2d 177 [166 P.2d 306], is inconsistent with the conclusion that no error was committed by the trial court. In that case the trial court left it to the jury to determine whether the plaintiff crossed at a marked or unmarked crosswalk. On appeal, defendants contended that the jury should have been instructed as a matter of law that there was no crosswalk at this intersection. In holding that the court should have instructed that there was an unmarked crosswalk, the appellate court said, "This is true because the open area and Bernal Avenue, both of which are roadways, intersect at that point and 'meet at approximately right angles.' That Diamond Street intersects both the open area and Bernal Avenue at angles which are not approximately right angles is immaterial, since the intersection of the open area and Bernal Avenue is at right angles and it was across that intersection that respondent was traveling at the time that his injuries were received." (Pp. 182-183.)

Plaintiff appears to have lost sight of the fact that in the present case the court did not instruct that there was no unmarked crosswalk. Here the court correctly instructed that plaintiff was not in a marked or unmarked crosswalk.

In concluding this examination of plaintiff's contentions with respect to alleged errors in the instructions, it may be observed that at plaintiff's request the following instruction was given: "The court also instructs you that notwithstand-

ing the provisions of subdivision (a) of section 562 of the Vehicle Code in reference to right of way, if you find from the evidence in this case that Mr. Johnson, the driver of the automobile in question, failed to exercise ordinary care for the safety of William Haerdter while Mr. Haerdter was crossing Army Street at the time and place in question, and if you further find that such failure of Mr. Johnson is the sole proximate cause of any injuries sustained by Mr. Haerdter at that time and place, then and under those circumstances your verdict should be in favor of Mr. Haerdter for such damages as you believe the evidence entitles him to.''

With respect to plaintiff's contention that the court erred in refusing to admit evidence which plaintiff urges was ''pertinent to the existence of an unmarked crosswalk,'' it appears that such evidence concerned the custom of the traveling public to cross Army Street from the northwest corner of Potrero Avenue and Army Street to the traffic signal on the south side of Army Street and the existence at the time of the trial of a marked crosswalk along this route. The admissibility of such evidence is largely within the discretion of the trial court. (*Barone* v. *Jones,* 77 Cal.App.2d 656 [176 P.2d 392, 177 P.2d 30] ; *Hayes* v. *Emerson,* 110 Cal.App. 470 [294 P. 765].) As section 85 of the Vehicle Code gives an express definition of ''an unmarked crosswalk,'' the trial court did not abuse its discretion in refusing other evidence which might have confused or misled the jury. Plaintiff's Exhibit No. 3 for identification, a photograph of the intersection in question as it existed at the time of the trial, which plaintiff claims should have been admitted in evidence, shows not only a new marked crosswalk from the northwest corner of Potrero Avenue and Army Street to the traffic signal on the south side of Army Street, but also reveals a partly obliterated former marked crosswalk between the westerly sidewalks of Potrero Avenue and Bayshore Boulevard.

The judgment is affirmed.

Bray, J., concurred.

PETERS, P. J.—I dissent.

In my opinion the trial court should have instructed the jury on the doctrine of last clear chance.

There is evidence from which the jury could have found that plaintiff was negligent, but that evidence does not compel the conclusion that such negligence was a proximate cause of

the accident. On the date of the accident there was no marked crosswalk across Army Street. Plaintiff crossed this 80-foot street at a point where pedestrians, acting reasonably, would normally cross. While the evidence is not clear on the point, it is susceptible of the interpretation that, when plaintiff started to cross, the traffic light was red for Army Street traffic approaching from the west. When plaintiff had passed the center of the street he observed the approaching vehicle about 150 feet away. He proceeded rapidly across the street and was within 5 feet of the gutter when he was hit by the right front fender of defendant's car. In other words, plaintiff had crossed in front of the left fender of defendant's car, passed in front of the radiator, and was within a foot of safety when he was hit. The slightest swerve to the left by defendant would have avoided the accident.

As to defendant's negligence there can be no doubt. Army Street at the scene of the accident is straight, level, and well lighted. Defendant testified that the night was dry and clear, that his lights were on high beam and that he was traveling at between 20 to 25 miles per hour. He admitted that when he was about 300 feet from the scene of the accident he saw a woman pedestrian about 75 to 80 feet in front of his car, and swerved to avoid hitting her. There was no physical obstruction between defendant's car and plaintiff. Defendant's explanation as to why he did not see the plaintiff, although he was looking straight ahead, was that, at some undisclosed place within the last 300 feet, he was blinded by the glare from the lights of vehicles approaching from the right on Bayshore Boulevard. Even though blinded by this glare, the defendant, if his story is to be believed, proceeded ahead at 20 to 25 miles an hour, in complete disregard of what might be on the street ahead. He testified, in an obvious attempt to preclude the application of the doctrine of last clear chance, that he did not see the plaintiff until plaintiff had crossed in front of the automobile and was 5 feet in front of the right fender.

If there were a doctrine of comparative negligence in this state, which there is not, there could be no reasonable doubt but that the negligence of defendant was greater than that of plaintiff. The rule is that, if the plaintiff is guilty of contributory negligence of any degree that proximately causes the accident, he is barred from recovery no matter how great the negligence of the defendant may have been. But, for that rule to apply, the contributory negligence of the plaintiff must

have been a proximate cause of the accident. Accordingly, even though the plaintiff may have been negligent, if the defendant had the last clear chance to avoid the accident he is liable under the theory that, in such event, the negligence of the defendant is the sole proximate cause. These principles are elementary, but must be kept in mind in ascertaining whether the jury should have been instructed on the doctrine in this case.

In this state, in order that the doctrine may be applicable, the defendant must have actually seen the plaintiff in time to avoid the accident under circumstances that defendant knew or should have known of the danger to plaintiff. It is not sufficient that the defendant should have seen the plaintiff—the evidence must be reasonably susceptible of the interpretation that defendant actually saw the plaintiff. But, in this connection, the jury is not bound to believe the testimony of defendant that he did not see the plaintiff, nor is the jury bound to believe defendant's explanation of why he did not see. The majority opinion does not challenge these fundamental principles. In fact, it quotes the proper rule as stated in *Gillette* v. *City of San Francisco*, 58 Cal.App.2d 434 [136 P.2d 611], but then, in my opinion, fails to apply the rule. The rule as there stated is that: ". . . notwithstanding there may be a total absence of any positive testimony that the defendant actually knew of plaintiff's danger, and even though the defendant definitely denies seeing the plaintiff at all, the doctrine of the last clear chance may be invoked and applied where the facts and circumstances are such as would justify the jury in finding that despite the defendant's denial of knowledge or the absence of direct testimony on the subject, he was actually aware of plaintiff's danger in time to avert the accident; in other words, that he 'must have known' of plaintiff's danger." (58 Cal. App.2d 434, 442.) The other cases cited in the majority opinion, and many others could be cited, abundantly support that rule.

Now how does the majority opinion purport to apply that rule? It says that there is no fact or circumstance contained in the evidence from which the jury could have inferred that defendant actually saw plaintiff in time to avoid the accident. In this connection that opinion states that defendant's testimony on this point is "uncontradicted," and apparently for that reason must be believed. Now let us see what the record discloses. The defendant testified that he was looking straight ahead, on a straight, level, well-lighted street, on a clear, dry

night, and that shortly before the accident he could see a pedestrian 75 to 80 feet in front of him. But I did not see the plaintiff because, says defendant, I was blinded by the glare of lights from vehicles approaching from the right on Bayshore Boulevard. Even if that testimony were completely uncontradicted by any evidence, the jury was not bound to believe it. The jury is the sole judge of the credibility of a witness and may disbelieve even uncontradicted evidence. But, in this case, that evidence is not uncontradicted. Various diagrams and photographs of the scene of the accident were introduced into evidence. They disclose that Bayshore Boulevard, itself a very wide street, comes into Army Street at an angle. It was from the lights of automobiles traveling on Bayshore Boulevard that defendant claims he was blinded. To say the least, it is doubtful, since light travels in approximately a straight line, that headlights from cars on Bayshore Boulevard could have, under fundamental laws of physics, blinded the defendant. To say the least, it was for the jury to determine whether defendant's testimony that he was blinded by such lights was true or false. A finding that he was not so blinded could find ample support in the diagrams and photographs. The question was at least debatable. This being so, the evidence is susceptible of the reasonable interpretation, and the jury could have found, that defendant was not blinded, but proceeded to run the plaintiff down under circumstances where if, as he testified, he was looking straight ahead, he must have seen the plaintiff.

There can be no doubt that if a defendant testified that he was looking straight ahead and did not see what was plainly obvious, his failure to see is negligence—in fact, his failure to see under such circumstances is negligence as a matter of law. (*Huetter* v. *Andrews*, 91 Cal.App.2d 142 [204 P.2d 655]—hearing denied by Supreme Court.)

In this case, if the jury disbelieved the testimony that defendant was blinded, it would have to find that defendant was negligent. That, of course, is not sufficient to make the doctrine of last clear chance applicable. As already pointed out, for that doctrine to be applicable, the jury must find not only that defendant was negligent in not seeing, but that he actually did see the plaintiff in time to avoid the accident. In this connection the majority opinion falls into fundamental error. It holds, in cases where the defendant denies seeing the plaintiff, that before the jury can find he actually did see him, there must be some fact or circumstance that demon-

strates he actually did see. Thus, it is stated that, in cases where the doctrine has been held applicable, there was evidence that prior to the accident the defendant swerved, blew his horn, put on his brakes, or some such evidence. Unless some such fact or circumstance is shown, according to the majority opinion, the defendant's testimony that he did not see must be believed, and the doctrine of last clear chance is not applicable. That is not the law. There is no such artificial and illogical limitation on the doctrine. If the plaintiff is in a position of danger that would be plainly obvious to a careful driver, and there is testimony that defendant was looking straight ahead, the law is and should be that the jury may infer that defendant's testimony that he did not see is false and that in fact he did see. The true rule, supported by many authorities, is thus stated in 2 California Jurisprudence Ten Year Supplement, section 128, at page 189: "Again, where it appears that the victim was in the path of the vehicle and plainly visible to the driver, the trier of facts may properly conclude that the driver 'must have seen' him. Hence, the jury may be instructed as to the Doctrine of Last Clear Chance although there is no direct evidence that the defendant actually knew of the victim's presence in the roadway, and, indeed, although he may have testified that he did not see the victim in time to avert the collision." This is sound law and supported by many cases. In addition to the cases cited in support of the above quotation, and which do support it, there are several other cases where the only evidence was that the view of defendant was unobstructed, that he was looking straight ahead, but that he did not see the plaintiff in time to avoid the accident. Nevertheless, it was held that it was for the jury to determine whether defendant in fact did see the plaintiff in time to avoid the accident. These cases all hold that from evidence that the defendant should have seen, the jury may infer that he, in fact, did see. (See *Argo* v. *Southern Pacific Co.*, 39 Cal.App.2d 706 [104 P.2d 77]; *Pire* v. *Gladding McBean & Co.*, 55 Cal.App.2d 108 [130 P.2d 143], and cases cited in those opinions.) Another excellent case on the subject is *Handley* v. *Lombardi*, 122 Cal. App. 22 [9 P.2d 867]. There the defendant testified that he did not see plaintiff's truck until just before the collision. There was no evidence that defendant swerved, blew his horn, put on his brakes, or did any other act that would indicate that he saw plaintiff in time to avert the accident. Neverthe-

less, the doctrine of last clear chance was held applicable. In so holding, Mr. Justice Dooling stated (p. 26):

"The court instructed the jury on the last clear chance doctrine and appellant claims error on that ground. The case is on all-fours with *Smith* v. *Los Angeles Ry. Exp. Co.*, 105 Cal.App. 657 [288 P. 690, 691], wherein it was held that the jury was properly instructed on the doctrine of last clear chance. In the Smith case a horse-drawn vehicle traveling at the rate of three miles per hour was struck by an electric car traveling at the rate of twenty-five miles per hour. Substitute slow-moving truck for slow-moving horse and wagon, and rapidly moving automobile for rapidly moving street-car and the cases are not distinguishable on their facts, with the exception that appellant had the additional opportunity to avoid a collision afforded by his ability to turn his automobile so as to pass to the rear of the truck which is denied to a street-car confined as it must be to its own tracks.

"Specifically, appellant claims that since appellant testified that he did not see the truck until he was almost upon it, there was no evidence from which the jury could find that he had actual knowledge of the danger of collision before it was too late to avoid it. A similar claim was disposed of in the Smith case in the following language: 'The motorman testified that he did not see plaintiff on the tracks until the car was within some 30 feet of the wagon, and that the horses were then upon the track. It is contended that there is no other evidence in the record which would justify a contrary finding. The track, for some blocks leading to Third Street, was straight; one could see for several blocks; the motorman himself admitted he could see for some 150 feet ahead. He was sitting on his chair at the front of the car, with his hand on the control, for several hundred feet while approaching the scene of the injury. The wagon was moving at the very slow speed of three miles per hour. The car was moving about eight times as fast, or some 25 miles per hour. The wagon had proceeded some 12 feet into the path of danger before being struck. Under all the circumstances . . . the jury might have found that the motorman saw plaintiff in time to have avoided the injury, and while plaintiff was actually in peril.' The same inference could have been drawn in the case in hand. It is obvious, with the truck moving ten or twelve miles per hour, that there would. be an appreciable time when the truck would be in a position of danger from which nothing that the driver of the truck could do

could possibly extricate it. From the time that the front end of the truck was too close to the path of the oncoming automobile to stop before entering that path, until it was actually struck in the rear wheel, the driver of the truck was helpless to avoid the collision. During the same period appellant, by either applying his brakes or swerving behind the truck, could have avoided striking it. The truck was there in plain sight; appellant was sitting at the wheel of the oncoming automobile; there were no obstructions to his view. The jury was not bound to accept his testimony that he did not see the truck until just before he struck it.''

The rule of these cases is fundamentally sound, and conclusive of the instant case. Once it is admitted that the jury could have found that defendant's uncorroborated and, in my opinion, inherently improbable testimony that he was ''blinded'' was false, then we have a case where the evidence shows that defendant ran the plaintiff down on a level, straight, well-lighted street, on a clear, dry night, where he could see pedestrians and did see one at least 75 to 80 feet ahead of his car, and where he was looking straight ahead. Under such circumstances the jury could, under the rule of the cases cited, find that defendant did see plaintiff and could reasonably infer that he proceeded straight ahead in the erroneous belief that plaintiff would clear the fender. The evidence is reasonably susceptible of the interpretation that defendant saw plaintiff, but simply guessed wrong by misjudging the distance. According to the illogical rule contained in the majority opinion, if defendant had swerved, blown his horn or put on his brakes, then the last clear chance doctrine would have been applicable, but where the defendant makes no effort to avoid the accident after seeing the plaintiff, the doctrine is not applicable. That is not and should not be the law.

This case falls precisely within the rule of cases cited. This being so, it was for the jury to determine whether defendant did or did not have the last clear chance to avoid the accident, and the jury should have been so instructed. Failure to do so was most serious error requiring a reversal.

A petition for a rehearing was denied July 23, 1949. Peters, P. J., voted for a rehearing. Appellant's petition for a hearing by the Supreme Court was denied August 18, 1949. Carter, J., voted for a hearing.